JOHN COPE, Administrator of JOHN MCCRANEY and ELIZA-BETH MCCRANEY, Respondent, v. WILLIAM T. WHEELER et al., Executors of JULIUS T. ALDEN, deceased, Appellants.

An action for money had and received is the proper form in which a mortgagor may sue for surplus moneys, arising upon a statutory foreclosure and sale, and inequitably retained by the mortgagee. JAMES, J.

Accordingly, where the mortgagee claims to retain the surplus moneys, as applicable to the payment of the amount due upon a subsequent mortgage upon the same property, made by the same mortgagor, and such mortgage is, in fact, usurious, the mortgagor may recover such moneys in an action against the mortgagee for moneys had and received.

Where the consideration for a $1,500 mortgage, executed by husband and wife, is in part the sum of $500 cash loaned to them, and in part the assignment to the husband of a previous usurious mortgage for $1,000 given by the wife to the mortgagee, upon her own lands, before her marriage—*Held*, that the $1,500 mortgage is void for usury, and cannot be enforced.

*Held*, further (GROVER and LOTT, JJ., *contra*), that although the wife conveyed the lands covered by the $1,000 mortgage to a purchaser, subject to that mortgage, the amount of which was deducted from the consideration of the deed; and although the husband, after the $1,000 mortgage had been assigned to him, had settled with the purchaser therefor and discharged the lien of record, still the holder of the $1,500 mortgage could not retain from such husband and wife the surplus moneys arising from a sale of the land upon a foreclosure of a previous mortgage thereon, except, at most, to the amount of the cash portion of the consideration of the said $1,500 mortgage.

(Cause argued Sept. 29th, and decided Dec. 21st, 1869.)

THIS is an appeal from a judgment of the General Term of the Supreme Court, in the sixth judicial district, affirming a judgment entered on the verdict of a jury at the Otsego Circuit.

The original parties to the action were John McCraney and Elizabeth P. McCraney as plaintiffs, and Julius T. Alden, defendant. The action was to recover surplus moneys in the hands of defendant, arising on a foreclosure sale of mortgaged premises; the defence was a claim to such surplus by virtue of a subsequent mortgage held by defendant on the same premises; the reply to this defence, was that said subsequent mortgage was usurious.

The mortgage foreclosed was made in January, 1860, by plaintiffs to defendant, for $800, upon land jointly owned by the plaintiffs. It was foreclosed and sold in May, 1862, and the surplus amounted to $1,379.12.

It appeared, that in November, 1858, before the marriage of the plaintiff, the defendant loaned to the plaintiff, Elizabeth, a sum of money, and took her bond for $1,000, secured by mortgage on lands in the State of Wisconsin. This transaction took place at Oneonta, in this State, where the parties then resided, and the papers were all made and executed there. It was claimed that this bond and mortgage was given to secure $1,000, under an agreement that on the payment of that sum $100 was to be, and was handed back as extra interest.

The plaintiffs intermarried previous to November, 1859, and on the tenth day of November, 1859, the said Elizabeth conveyed a certain portion of the lands in Wisconsin mortgaged to the defendant, to one Huntington, for the sum of $6,000, subject to the payments and conditions specified in the mortgage to said Alden. The grantee did not covenant to pay said mortgage, but he testified orally, that $1,000 was deducted from the purchase price in consequence of said mortgage.

In July, 1861, the plaintiffs applied to the defendant for another loan of money, and the negotiation resulted in his advancing to them $500 in money, and assigning to the plaintiff, John McCraney, the bond of said Elizabeth before marriage, together with the mortgage on the Wisconsin property, which, together with interest on the $800 bond and

mortgage, amounted to $1,669, for which the plaintiffs, on the fifth day of said July, executed and delivered to the defendant their bond for $1,669, secured by mortgage on real estate in Oneonta, being the same premises covered by the $800 mortgage. It is under this $1,669 mortgage that the defendant claims to retain the surplus money; which the plaintiffs insist is usurious by reason of the Wisconsin mortgage entering into, and forming part of its consideration.

The plaintiff, John, after obtaining the Wisconsin mortgage, settled with Huntington for a part of the same, and discharged the mortgage. Before trial the plaintiff, John McCraney died, and John Cope, being appointed his administrator, was substituted as plaintiff in place of deceased.

When the evidence closed, the defendant's counsel made a motion for a nonsuit which was denied. He also made numerous requests to charge, which were denied, and took several exceptions to the charge, which, so far as deemed material, will be noticed in the opinion. The question of usury was then submitted to the jury, who found for the plaintiff, with $1,104.12 damages.

Judgment having been suspended, a motion was made for a new trial on exceptions, which was denied, and judgment ordered for the plaintiffs on the verdict by the General Term. The defendant then appealed from the judgment to this court.

*E. Countryman*, for the appellant, insisted, among other things, that this action for surplus moneys would only lie where the defendant had received money, which in *equity* and good conscience he ought to refund, and that neither equity or good conscience called upon the defendant here to refund these moneys, and cited *Barber* v. *Casey* (11 Barb., 549); *Eddy* v. *Smith* (13 Wend., 488, 490); *Rathbone* v. *Stocking* (2 Barb., 145); *Buel* v. *Boughton* (2 Den., 91); *Moses* v. *McFarlan* (2 Burr., 1010); *Cox* v. *Wheeler* (7 Paige, 248); *Bartlett* v. *Gale* (4 Paige, 503).

The $1,000 mortgage related to lands in Wisconsin and

was made with reference to the laws of that State, and was not therefore usurious. (Story on conflict of Laws, §§ 364, 367, 372, 424, 427; 2 Parsons on Contracts, 5th ed., 571; *Hosford* v. *Nichols*, 1 Paige, 220; *Abeel* v. *Douglas*, 4 Denio, 305; *Nicholson* v. *Leavitt*, 4 Sandf. Sup. R., 253, 276; *Young* v. *Brush*, 28 N. Y., 674; *Giddings* v. *Eastman*, Clarke's Ch. R., 19; *Goddard* v. *Sawyer*, 9 Allen, 78; *Sell* v. *Miller*, 11 Ohio State, 331; *Cutler* v. *Davenport*, 1 Pick, 81, 86; *Chapman* v. *Robertson*, 6 Paige, 627; *Bolme* v. *Wombough*, 38 Barb., 352; *Vanschaick* v. *Edwards*, 2 Johns. Cases, 358, 361; *Fisher* v. *Otis*, 3 Chandl. (Wisc.), 83; *Sherman* v. *Gassett*, 4 Gilman, Ill., 521; *Butters* v. *Olds*, 11 Iowa, 1; *Pine* v. *Smith*, 11 Gray, Mass., 38; *Atwater* v. *Roelofson*, 2 Handy, Ohio, 19; also reported in 4 Amer. Law Reg., 549; *Connor* v. *Bellamont*, 2 Atkins, 382; *Lansdowne* v. *Lansdowne*, House of Lords, 2 Bligh New Parl. Rep., 60.)

It is well settled, that where a contract is made in one State to be performed in another, the highest rate of interest allowed by either State may be reserved. (*Depeau* v. *Humphreys*, 20 Martin, Lous., 1; *Peck* v. *Mayo*, 14 Verm, 33; *Hull* v. *Wheeler*, 7 Abb., 411; *Potter* v. *Tallman*, 35 Barb., 182; *Cutler* v. *Wright*, 22 N. Y., 472, 474; *Jacks* v. *Nichols*, 5 N. Y., 178, 185; *Jewell* v. *Wright*, 30 N. Y., 259, 264; *Curtiss* v. *Leavitt*, 15 N. Y., 13, 227; *Everett* v. *Vendryes*, 19 N. Y., 436, 438; *Richards* v. *Globe Bank*, 12 Wisc. 692; *Andrews* v. *Pond*, 13 Peters, 65.)

By the sale and conveyance to Huntington, the mortgagor elected to ratify the usurious debt and provide for its payment by specifically appropriating land for the purpose, and a valid lien was thereby created and could have been enforced. (*Hartley* v. *Harrison*, 24 N. Y., 170; *Russell* v. *Pistor*, 7 N. Y., 171; *Berdan* v. *Sedgwick*, 40 Barb., 359, 362; *Halsey* v. *Reed*, 9 Paige, 446; *Shufelt* v. *Shufelt*, 9 Paige, 137, 145; *Ferris* v. *Crawford*, 2 Denio, 595; *Post* v. *Dart*, 8 Paige, 640; *Sands* v. *Church*, 6 N. Y., 347; *Morris* v *Floyd*, 5 Barb., 130, 135; *Wells* v. *Chapman*, 13 Barb., 561; *Trotter* v. *Hughes*, 12 N. Y., 74, 79.)

Statement of case. ·

The $1,669 mortgage, being founded in part on other consideration than the $1,000 mortgage, and given upon other lands and with an additional party as mortgagor, the same is not affected with usury in the $1,000 mortgage; as it was not intended by the parties as a contrivance to evade the statute of usury. (*Brown* v. *Waters*, 2 Maryland Ch. Dec., 201; *Pearce* v. *Barstow*, 9 Mass., 45; *Turner* v. *Hulme*, 4 Espinasse, 11; *Fowler* v. *Henry*, 2 Bailey, S. C., 54; *Vickery* v. *Dickson*, 35 Barb., 97, 98; *Jackson* v. *Henry*, 10 Johns., 195, 204; *Cuthbert* v. *Haley*, 8 Durnf. & East, 390.)

As John McCraney was not a party to the Wisconsin mortgage, nor a surety, heir, devisee or personal representative of the borrower, he could not avoid it for usury, without paying or offering to pay the sum actually loaned. And then he could only recover the usurious excess. (*Billington* v. *Wagoner*, 33 N. Y., 31; *Rexford* v. *Widger*, 2 N. Y., 131; *Post* v. *Bank of Utica*, 7 Hill, 391; *Murray* v. *Judson*, 5 Seld., 85.)

*L. L. Bundy*, for the respondents, insisted, among other things, that if the $1,000 mortgage was void for usury; the $1,669 mortgage was also void, and cited, 2 Parsons on Contracts, 396; *Mitchell* v. *Davis* (30 Johns., 285); *Jacks* v. *Nichols* (1 Selden, 178); *Wallace* v. *Bank of Washington* (3 How., U. S. R., 62); *Cope* v. *Alden* (37 How., 187); *Vickery* v. *Dickson* (35 Barb., 96); *Dunning* v. *Merrill* (1 Clark, Ch. R., 252); *Harrison* v. *Hennell* (5 Taunt., 780); *Cuthbert* v. *Haley* (8 T. R., 390); *Bullock* v. *Boyd* (2 Hoff. Ch'y R., 294, 306, 307); *Bridge* v. *Hubbard* (15 Mass. R., 96); 35 Barb., 76, above cited; *Reid* v. *Smith* (6 Cow., 647); *Barton* v. *Port Jackson Co.* (17 Barb., 397); *Rose* v. *Truax* (21 Barb., 361); *Loomis* v. *Newell* (15 Pick, 159); Chitty on Contracts, 51; 1 Smith's Leading Cases, 438; *Andrews* v. *Ives* (8 Conn., 368).

The $1,000 bond and mortgage must be governed, as to its validity, by the laws of New York. (*Williams* v. *Fitzhugh*, 37 N. Y., 451, 452; Story on Conflicts of Laws, §§ 282, 317,

321, 332, 340; 2 Kent's Com., 457; *Curtiss* v. *Leavitt*, 15 N. Y., 9, 227; *Jewell* v. *Wright*, 30 N. Y., 259, 264; *Lee* v. *Sillick*, 33 N. Y., 615, 618; *Hosford* v. *Nichols*, 1 Paige, 220; *Merritt* v. *Bartholick*, 47 Barb., 253; 36 N. Y., 44.)

The transaction between Huntington and the McCraneys with reference to the $1,000 mortgage, and of John McCraney with reference to the discharge of the mortgage, do not aid the defendant in this action. (*Berdan* v. *Sedgwick*, 40 Barb., 353, and cases cited; 4 Denio, 104; *Dunning* v. *Merrill*, Clarke's Chy., 252, marg. p., and see Mr. Moak's note, p. 204, 2d ed.; *Snyder* v. *Sponable*, 1 Hill, 567; Id., 7 Hill, 427; *Jackson* v. *Stevens*, 16 Johns., 110; *Jackson* v. *McConns*i, 19 Wend., 175; *Rogers* v. *Benson*, 5 Johns. Chy., 431; *Torrey* v. *Torrey*, 14 N. Y., 430; *Ackley* v. *Tarbox*, 31 N. Y., 164; *Marquat* v. *Marquat*, 2 Kern., 336.)

James, J. This action was properly continued in the name of the plaintiffs. The surplus was personal property and belonged to the plaintiffs jointly, and the interest of the plaintiff, John, on his death passed to his representatives.

The form of the action was also proper. Where money has been received, which in equity belongs to another, an action for money had and received will lie for its recovery; and now, under the Code, any defence, legal or equitable, may be interposed by the defendant.

The defence of usury, while the statute against usury remains, is entitled to the same consideration as any other defence. It cannot be disregarded, or treated as unconsionable, and subjected to more strict rules of construction than other defences.

One of the important questions in this case is, whether the bond and mortgage for $1,669 was usurious; and that depends upon whether the $1,000 bond and mortgage was a New York or a Wisconsin contract. Upon that question I entertain no doubt.

At the time of negotiating and executing the $1,000 bond and mortgage, both parties resided in this State; the agree-

ment for the loan was here made; the instruments were both executed here; the money paid here; and the excess of interest received here. Although the land covered by the mortgage was situate in the State of Wisconsin, yet neither bond or mortgage named any place of payment, and hence the same were payable here, where the parties resided.

This question was very thoroughly examined in the Supreme Court on a former appeal in this same cause, and an opinion written on that occasion by Justice MASON gave the true exposition of the law on this question, and may well be adopted as the opinion of this court on that question. (53 Barb., 350.)

It being a New York contract, the question of usury was for the jury, and their finding is conclusive upon the fact. The evidence fully sustained the verdict.

That mortgage being usurious, and it having entered into and formed a part of the consideration of the mortgage on which the defendant seeks to apply the surplus money in his hands, the latter is also tainted with usury, and is void. (*Giblet* v. *Averill*, 5 Denio, 88; *Jacks* v. *Nichols*, 5 N. Y., 178; *Price* v. *Lyons Bank*, 33 id., 55.)

Such latter mortgage was void for the whole amount; but as no exception was taken by the plaintiffs to the instructions of the judge to the jury, as to the amount of recovery, no question arises on that point.*

The appellant insists that the court erred in refusing to

---

* NOTE.—In *Williams* v. *Fitzhugh* (37 N. Y. R., 451), it was expressly and sharply decided, by this court, that where a mortgage or other security was given to secure several notes, some of which were usurious and some not, the mortgagor (notwithstanding the act of 1837, chap. 430, § 4, and 1 Rev. Stat., p. 77, § 8), cannot have the mortgage delivered up by a court of equity, to be cancelled, except upon offering to pay the amount due on the notes not usurious. The statutes, providing that the borrower filing a bill in chancery, for relief against usury, shall not be obliged " to pay, or offer to pay, any interest or principal on the sum or thing loaned," &c., as a condition of relief, applies to the principal and interest of the amount usuriously loaned, and not to the other non-usurious loans secured by the same security.

This decision is, perhaps, an authority for the judgment of the court below in this case.—REP.

submit to the jury the question "whether or not the said loan was intended to be made and said mortgage executed by the parties, in good faith and with sole reference to the laws of Wisconsin; and if the jury should find in the affirmative, then, that the same was governed by the laws of Wisconsin." A sufficient answer to this exception is the fact that there was no evidence on which to base such a request. On the contrary, the evidence was all the other way, and a verdict finding such proposition would have been set aside as against evidence. The request was properly refused.

It is next insisted that the court erred "in ruling that the $1,000 mortgage was not a valid lien upon the Wisconsin land conveyed to Huntington, from the date of the conveyance to him, subject to that mortgage." This exception presents a question of some difficulty. Within the ruling of this court, in *Hartley* v. *Harrison*, (24 N. Y. Rep., 170), this mortgage did become a valid lien on the Wisconsin property as against Huntington. It was held in that case "that a purchaser who takes a conveyance of the premises from the mortgagor, subject to the lien and payment of a mortgage, cannot set up the defence of usury against such a mortgage, and thus obtain an interest in the land which the mortgagor never agreed or intended to transfer to him." In this case, the land was sold to Huntington subject to the lien of the said $1,000 mortgage; Huntington did not covenant to pay said mortgage, but the sum was deducted from the purchase price on account thereof, and Huntington paid one year's interest thereon. The mortgage, therefore, became a valid lien upon the land as against Huntington, although he did not become personally responsible for the debt; and the defendant, had he not parted with the mortgage, could have enforced it against the land. But before it can be said the court erred in refusing to charge as requested, we must see whether the question was at all material. Although the plaintiffs, when they conveyed to Huntington, had concluded to waive the usury, they subsequently changed their minds; and whether they could have recalled that waiver is not material here,

because the mortgage while executory was, by the defendant, transferred to and became a part of the $1,669 mortgage. "The conditional sale to Huntington was not a confirmation of the original debt;" a usurious contract, while it remains executory, is wholly incapable of confirmation; and although the deed to Huntington was such a waiver as enabled the defendant as against Huntington to enforce the mortgage against the land, if he chose; yet, as against the borrower himself the waiver was of no force; so that, had these Wisconsin lands afterward become the property of the plaintiffs by conveyance from Huntington, this mortgage remaining unpaid, the defence of usury would have been available to them against its enforcement.

In this case, the usurious mortgage was neither paid nor collected from the fund to which the waiver was extended. As to any other fund, the defence of usury remained. It was carried into, and made part of another instrument; *it is this latter instrument which is sought to be enforced against the borrower, to be collected from another fund.* To this attempted enforcement of said latter instrument, the defence of usury may be interposed by the borrower.

Something is claimed by the appellant, because the usurious mortgage was assigned to one of the plaintiffs, and its lien discharged from the Wisconsin property, whereby they received the unpaid balance of its purchase price. Surrendering a valid collateral security to an usurious instrument, would not purge that instrument of the usury; the invalidity would still remain. In this case the taint of usury was not removed from the original mortgage by the borrower's waiver of it as against a particular fund; nor was it wiped out by taking a new mortgage for the old one, and assigning the latter to the borrower, whereby the fund to which the waiver attached was still retained by the borrower. The statute of usury cannot be avoided in that way. The substituted instrument had all the vice of the original one, and the defence of usury was fatal to its enforcement. The evidence offered by the defendant constituted no defence, was wholly immaterial, and was, therefore, properly excluded.

It is next insisted, that the court below erred in declining to charge the jury that "the $1,669 mortgage, being founded upon other consideration in part than the said $1,000 mortgage, and given upon other lands, and with an additional party as mortgagor; the same is not affected by any usury in said $1,000 mortgage, if it was not intended by the parties as, and in fact was not, a mere contrivance to evade the statute of usury, which was a question for the jury to determine. There was no error in this ruling. The usurious character of the $1,669 mortgage depended upon the character of the $1,000 mortgage. If that was usurious it tainted the other, whether the parties to the latter intended to violate the statutes of usury or not.

These are all the exceptions that I deem it important to notice. The judgment of the General Term must be affirmed.

Woodruff, J. It was shown in this case, that Mrs. McCraney, then Mrs. Baker, applied to the appellant's intestate, both then residing and being in this State, for a loan of money. That he consented to the loan. That she wanted the money, or a part of it, for immediate use, and did use it here. That the repayment was secured by her bond, conditioned for such repayment with interest. The jury have found, that the loan was upon an agreement by her to pay more than interest at seven per cent for annum, for the use of the money, and that such excess was in fact paid.

If this were all of the transaction, no question could have been made that this was in every legal sense a New York contract, wholly governed by our laws and usurious, and the bond therefore void.

What then is supposed to change its character?

1st. Payment of the bond was secured by a mortgage upon land in Wisconsin, which mortgage contained a covenant for such payment.

Nothing is, I apprehend, better settled than, that the mere fact that collateral security for the payment of a debt contracted here, and payable here, is real property situated

in another State, does not change the place, by the laws of which, the validity of the contract is to be tested. And the circumstance, that the mortgage contained a personal covenant for the payment cannot have that effect. That covenant, on the contrary, has reference to the bond, it is merely a cumulative personal undertaking, and is a covenant to pay according to the tenor and effect of the bond, the very money, and upon the very loan made here, secured here, and to be paid here. Indeed, the personal obligation to pay may sometimes of itself make a mortgage usurious, where a mere pledge, with the privilege of redeeming or not, at the option of the borrower, would not be.

2d. The contract is said to be withdrawn from the operation of our usury laws, because as claimed, it was made with reference to the laws of Wisconsin, where it is lawful to reserve interest at the rate of twelve per cent per annum.

No doubt it is possible for parties in this State to make a contract of loan or advance with such reference to a foreign law, that the latter will govern its construction and legal effect. But that rule does not import, that parties, by a mere mental operation, can import the law of another State into this for the purpose of altering the character of a loan made here, and to be here returned without any undertaking or duty to use the money anywhere else, or any understanding that in respect to the use or repayment of the money the loan shall differ from any other.

The pretext, that this loan was made with reference to the law of Wisconsin, rests on the fact that Mrs. Baker had money due to her there at twelve per cent interest, which the borrower there desired to retain, and to which she had consented. And that as she was to receive twelve per cent for her money lent in Wisconsin, she was willing, and agreed to pay twelve per cent for money borrowed in New York to relieve her then present wants.

There is no pretence that she borrowed money to be taken to Wisconsin for investment at a rate lawful there, and an undertaking to pay over what she received there, or a part of it

as compensation or profit to the lender.  Possibly some such arrangement might be made either in the nature of a partnership in the adventure, or an agency to put out money in Wisconsin for the profit of the party making the advance, which would not be unlawful here.

But when the loan is here made, and here to be repaid, and the use of the money loaned is unrestricted, the reason why the borrower is willing to pay more than lawful interest is wholly irrelevant and immaterial.

Suppose a party desiring money for the payment of his rent or family expenses, should agree to pay therefor twelve per cent per annum, should give as a reason for his willingness to do so, that all his capital was now employed in a profitable trade or manufactory in Louisiana, and yielding him a profit of twenty per cent per annum, and he therefore preferred to borrow and pay fifteen or twenty per cent here for the time being, rather than withdraw any of such capital. This would have no effect upon the validity of the loan. The reason assigned in this case, that Mrs. Baker's money was yielding her twelve per cent per annum in Wisconsin, where loans at that rate were lawful, has no greater or other effect.

I do not deem it necessary to refer to authority on what is so plain.  This court held in *Williams* v. *Fitzhugh* (37 N. Y., 444), that the contract of loan and the notes given therefor, were governed by our laws, notwithstanding the payment was secured by a mortgage upon lands situated in Ohio, and notwithstanding, also, the borrower lived in Ohio.  That holding is a decision of the present case on that point.

These facts were not in dispute, and the court properly held that if the transaction was such as testified to and as the jury found, then the mortgage for $1,000 was void.

I think it clear, that the sale of the land mortgaged to Huntington, subject to the mortgage, and leaving in his hands the amount thereof, out of the purchase money, did not alter the relations of the parties to the mortgage, so as to give the defendant any personal claim upon the mortgagor. Let it be conceded for the present, that after such sale the

mortgagee could have enforced his mortgage by a sale of the land, and that Huntington could not have defended successfully. This would be not because the mortgage was not usurious and void as between the parties thereto, but because he was not at liberty to use that as defence, having retained in his hands the amount. But when afterward the defendant's testator negotiated with the mortgagor and her husband for a further loan, and took a new mortgage, he renewed the personal obligation to pay the usurious debt already held by him unreleased, and incorporated it wholly into the new mortgage. The latter became thereby, the personal obligation of the parties to pay the usurious debt in mere renewal of the former mortgage.

I have considered the other points submitted by the appellant, and am satisfied that they suggest no sufficient ground for reversal. The judgment should therefore be affirmed.

All the judges concurring for affirmance except GROVER and LOTT, JJ.

Judgment affirmed.