## WILLIAM L. GLASS

### v.

## JOHN W. DOANE ET AL.

1. SALE OR MORTGAGE —The test by which to determine whether a conveyance of lands made in consideration of the grantor's indebtedness to the grantee is a sale or a mortgage, is to be found in the question whether the debt was discharged or not by the conveyance. And this test applies as well to sales and assignments of chattels.

2. CONDITIONAL SALE IN NATURE OF MORTGAGE—SURPLUS LIABLE TO GARNISHMENT.—A failed in business, and on the same day executed judgment notes to B to the amount of his indebtedness to B, and also, by an instrument under seal, sold and assigned all sums of money due upon his open or book accounts, with full power to collect, etc. Subsequently C, A's debtor, sued out an attachment against the property of A, B being named as garnishee. Thereafter, A made a general assignment for the benefit of his creditors. D, the assignee, thereupon filed an interpleader in the attachment suit, claiming the property garnished in B's hands as his. Treating the instrument above as a conditional sale in the nature of a mortgage, held, that the rights of the garnishee are paramount to those of both the attaching creditor and the assignee, to the extent of A's indebtedness to him; that the surplus, if any results, is liable to garnishment, and the lien of C, being prior to that of the assignee, his rights would be paramount to those of the assignee.

ERROR to the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding. Opinion filed May 20, 1884.

On the 17th day of January, 1882, Henry B. Lockwood, a merchant of Chicago, failed in business. On the same day he executed two judgment notes, due on demand, one for $54,579.90, payable to the order of Carter, Hawley & Co., and the other for $36,569.76, payable to the order of Carter and Hawley, two of the members of that firm. He also at the same time, by an instrument in writing under his hand and

seal, upon a consideration therein expressed, of "one dollar and other good and valuable considerations," sold, assigned, transferred and set over to Carter, Hawley and Macy, the members of the firm of Carter, Hawley & Co., "for their own proper use and benefit," any and all sums of money then due or to become due upon the open or book accounts of said Lockwood, giving them full power and authority, for their own use and benefit," but at their own costs, to ask, demand, collect, receive, compound and give acquittance for the same or any part thereof, and in the name of said Lockwood or otherwise, to prosecute or to withdraw any suits or proceedings at law or in equity therefor. Judgments were immediately entered on said notes, and executions were issued and levied upon the stock of goods of Lockwood, and thereby the sum of $37,607.91 was collected and applied to the judgment in favor of Carter, Hawley & Co., the other execution being returned wholly unsatisfied.

On the 25th day of January, 1882, John W. Doane & Co. sued out a writ of attachment against the property of Lockwood, claiming an indebtedness of $4,101.42, Carter, Hawley and Macy being named as garnishees, and on the same day the writ was personally served on Carter, no service being had on the other two garnishees. Subsequently, on the 7th day of February, 1882, Lockwood made a general assignment for the benefit of his creditors, Glass, the plaintiff in error, being the assignee.

On the 13th day of January, 1883, and while the attachment suit was pending, Glass appeared and filed his interpleader, claiming the property, credits and effects attached and garnished in the hands of Carter, Hawley and Macy as his, and praying for judgment accordingly. Issue was taken on the interpleader by the plaintiffs in the attachment, and the same came on to be heard by the court without a jury, upon a stipulation by the parties as to the facts. By the stipulation the matters above set forth are admitted, and it is also stipulated that on the 13th day of February, 1882, Glass, the assignee, filed a bill in the Circuit Court of Cook county against Carter, Hawley and Macy to set aside the transfer to

them of January 17, 1882, and for an accounting as to the proceeds of all the assets of Lockwood that had come into their hands, but it does not appear what the averments of the bill were, nor what, if any, proceedings had been taken in the suit. It is further stipulated, that since the filing of said bill, the plaintiff in the attachment had proved before the assignee the same claim on which they were seeking judgment in the attachment suit, and that the assignee had entered his motion in the county court for a rule on them to either dismiss their claim there or to dismiss the suit, but the ruling of the county court on that motion is not shown. It is also admitted that no dividend has been declared or paid by the assignee on any claim, and that he has no cash assets in his possession derived from the estate; also, that the assignee, immediately upon the assignment being made to him, qualified, and filed his proper bond. The foregoing being all the facts admitted or proved at the hearing, the court found the issues for the plaintiffs in the attachment and dismissed the interpleader, and the assignee brings the record to this court by writ of error.

Messrs. ISHAM, LINCOLN, BURRY & RYERSON, for plaintiff in error; that defendant in error, as a garnishing creditor, has no greater rights than Lockwood, cited Richardson v. Lester, 83 Ill. 55; Crownover v. Bamburg, 2 Bradwell, 162; Webster v. Steele, 75 Ill. 544.

Messrs. FLOWER, REMY & GREGORY, for defendants in error.

BAILEY, J. By the interpleader, the assignee under Lockwood's general assignment for the benefit of his creditors, is seeking to contest the right of the attaching creditors to hold, under their writ of attachmemt, the property, credits and effects attached in the hands of the garnishees. In point of time, the attachment writ has the priority, and it follows that if the assets sought to be reached, are subject to garnishment, the rights of the attaching creditors are superior to those of the assignee.

Glass v. Doane.

It should be observed that upon the hearing of the issues raised by the interpleader, neither party has shown or attempted to show that the transactions between Lockwood and the garnishees were in any respect fraudulent. The consideration for which the judgment notes were given, is not attacked or questioned, nor is there any attempt made to show that the transfer to the garnishees of Lockwood's book accounts, was not made in good faith and upon a good and adequate consideration. Fraud will not be presumed, but must be shown by the party alleging it, and as in this case fraud has neither been proved or alleged, it must be assumed for all the purposes of this decision, that the judgment notes and the transfer of the book accounts were made in good faith and upon a sufficient consideration, and that they are in all respects valid.

Proceeding, then, upon the assumption of their validity, what is the situation of the assets sought to be reached, and what are the rights of the parties in relation thereto? So far as regards the money collected on the execution, that is clearly beyond the reach of either of these contestants. The lien of the execution was prior both to the attachment and the assignment, and as the money collected has been applied upon a valid judgment in favor of the garnishees, it is theirs, and their right to it can not now be called in question.

How is it with the book accounts transferred to the garnishees? The instrument by which that transfer is made is, in form, an absolute sale and assignment of the accounts from Lockwood to the garnishees, and apparently vests them with the entire property therein, both legal and equitable. If that effect is to be given to it, then, clearly, the accounts and all moneys collected thereon belong to the garnishees, and neither the assignee nor the plaintiffs in the attachment suit can have any interest therein.

But we think the circumstances by which the transfer was surrounded, and from which its true character is to be determined, warrant the conclusion that, though absolute in form, it was really intended by the parties to operate merely as a security for the indebtedness of Lockwood to the garnishees.

See Jones on Chat. Mort., § 24. Lockwood, at the time, as we must assume, was indebted to the garnishees in the sum of $91,149.66, the amount of the notes. Having failed in business, he gave them his judgment notes due on demand for the amount of the indebtedness with the manifest intention of having judgments entered forthwith, and his property liable to execution, levied upon and sold in satisfaction thereof. At the same time, in consideration of "one dollar, and other good and valuable considerations," he transferred to them all his open or book accounts, with authority to collect the same and apply the moneys to their own use. It can not be doubted that these papers were all parts of the same transactions, and that the real consideration of the transfer of the accounts was the indebtedness for which the notes were given. No other adequate consideration is shown, and that being sufficient, will be assumed to be the true one. But it does not appear that the accounts were taken or accepted by the garnishees in payment or satisfaction of the indebtedness, or any part of it, or that any portion of the indebtedness was thereby cancelled, but directly the contrary is fairly inferable from the evidence.

One of the principal tests by which to determine whether a conveyance of lands made in consideration of the grantor's indebtedness to the grantee, is to be deemed an absolute sale or a mortgage, is, the effect which the parties intend the conveyance shall have upon the indebtedness itself. As said by Mr. Jones in his Treatise on the Law of Mortgages: " If the indebtedness be not cancelled, equity will regard the conveyance as a mortgage, whether the grantee so regarded it or not. He can not at the same time hold the land absolutely and retain the right to enforce payment of the debt on account of which the conveyance was made. The test, therefore, in cases of this sort, by which to determine whether the conveyance is a sale or a mortgage, is to be found in the question whether the debt was discharged or not by the conveyance. 1 Jones on Mort. § 267. The same rule is laid down in Sutphen v. Cushman, 35 Ill. 186. We perceive no reason why this test does not apply with equal propriety to sales and assignments of chattels.

Glass v. Doane.

But treating the instrument in question as a conditional sale in the nature of a mortgage, it is manifest that the rights of the garnishees are paramount to those of both the assignee and the attaching creditors, to the extent of Lockwood's indebtedness to them. It is only as to the surplus, if there should be any, that any controversy can arise, and the real question in the case is, whether such surplus is subject to garnishment. If it is, the service of the attachment writ being prior to the assignment, the lien of the attaching creditors upon the surplus is paramount to the rights obtained by the assignee through the assignment. If, on the hand, it is not liable to garnishment, the attaching creditors took nothing by their writ, and the right to the surplus passed by the assignment to the assignee.

It is doubtless the rule that legal rights only are subject to garnishment, and that mere equitable interests in choses in action, can not be reached by this process. May v. Baker, 15 Ill. 89. In other words, the process of garnishment being a legal proceeding given by statute, it only entitles a party to recover such indebtedness as could be recovered by an action of debt or *indebitatus* assumpsit in the name of the attachment debtors against the garnishee. Webster v. Steele, 75 Ill. 544; Wilcus v. King, 87 Id. 107.

Could the surplus in the hands of the garnishees in this case be recovered by Lockwood in his own name in an action at law? A mortgagee, after converting the mortgage security into cash, by sale or otherwise, so as to produce a surplus after paying the mortgage debt, holds such surplus as a trustee of the mortgagor, and may be compelled in equity to execute such trust by paying the surplus over to him. But we think he is liable also to an action at law for money had and received. He has in his hands money belonging to the mortgagor, which, in equity and good conscience, he ought not to retain; and in such case the action for money had and received is ordinarily the appropriate remedy. In Coke v. Wheeler, 41 N. Y. 303, it was held, that where a surplus realized from a statutory foreclosure of a real estate mortgage was equitably retained by the mortgagee, the action for money had and received was the

proper form in which the mortgagor might sue him therefor. In Webster v. Singley, 53 Ala. 208, it was held that the same action would lie in favor of a junior mortgagee who, *ex æquo et bono*, was entitled to the surplus. The rule is laid down in Jones on Chattel Mortgages, as follows: " A mortgagee becomes a trustee for the mortgagor as to the surplus received upon a sale in the exercise of a power, and the existence of this relation gives the mortgagor a right to the aid of a court of equity to obtain an account of the trust. But 'generally a resort to equity to obtain the surplus is neither |necessary or proper. A suit at law is generally sufficient." Jones on Chat. Mort. § 817.

It is true that in the present case, there is no power of sale, nor does it appear that any money has been or will be made by the garnishee by sale of the accounts transferred to them as security, but they are given the most ample power to convert them into cash by the more direct and appropriate mode of collection, and if on collection a surplus results, that surplus in equity and good conscience belongs to their mortgagor, precisely the same as though it had been produced by a sale in the execution of a power; and is recoverable in the same manner.

The surplus, then, in the hands of the garnishees, being recoverable by Lockwood in an action at law in his own name, was liable to garnishment. It follows that the lien of the attachment creditors is paramount to the rights of the assignee derived through the assignment, and that the decision of the court finding the issues and rendering judgment against the assignee on the interpleader, was in accordance with the facts as they appeared at the hearing.

A minor question is raised upon the decision of the court overruling the assignee's motion to dismiss the writ, on the ground that the garnishees were non-residents of the State, and so not liable, as is claimed, to the process of garnishment. Without determining the validity of this defense, if properly presented and sustained by proof, it may be remarked that it is questionable, to say the least, whether a defense which goes to the jurisdiction of the court of the persons of the parties, can

be properly raised by motion. But waiving that question also, it is sufficient to say that we have carefully examined the bill of exceptions which purports to embody all the evidence given at the hearing of the interpleader, and fail to find a syllable of evidence showing or tending to show that the garnishees were non-residents at the time of the service of the writ, or at any other time, except that in the instrument transferring the accounts to the garnishees, they are described as being of the city, county and State of New York. Even if that description was evidence of the fact, it only showed that at a date several days anterior to the service of the writ, the garnishees were residents of New York. *Non constat*, but that they may have become residents during that interval, and the fact that the garnishee served was found here, raises a presumption that he at least was resident here. There being no evidence, therefore, upon which the motion could be based, it was properly overruled.

We find no errors in the record, and the judgment will accordingly be affirmed.

Judgment affirmed.