JOHN FUSSELL *et al.* v. JOHN B. HENNESSY.

A. borrowed money of B. and gave an absolute deed of certain land to B. on B.'s verbal agreement to reconvey after being repaid the loan and to allow A. to remain in possession. B. was paid by C. and gave to C. an absolute deed of the land, C. making a similar verbal agreement as to A. C., apprehensive of death, conveyed the land to D., from whom he had received the money paid to B., and D. gave to A.'s wife a bond conditioned to con-

vey the land to her after payment of the sums due from C. to D. and from A. to C., or to convey to her so much of said land as should not be required to pay C.'s debt to D. and A.'s to C. A. remained in possession of the realty. D. sold the land in 1871, and the administrator and heir of A.'s wife in 1880 filed a bill in equity against D., to establish a trust on the surplus funds in his hands.

*Held,* that the bill could not be maintained in favor of the wife's estate. Since C. held the land as security, his deed to D. could raise no trust in favor of the wife unless A. joined in its execution, for A. held a resulting trust. Hence the agreement in the bond was without consideration and gave rise to no trust enforcible in equity.

*Held,* further, that the statute of limitations was a good defence.

*Semble,* that the surplus was recoverable in an action for money had and received immediately after the sale.

A decree sending a cause to a master is open to revision on final hearing.

BILL IN EQUITY to establish a trust and for an account.

This bill was filed by John Fussell, husband and administrator of Euphemia Fussell, and by John Fussell, Junior, his son, against the respondent Hennessy, alleging that in 1860 John Fussell was seized of certain realty in Massachusetts described in the bill, and borrowed four thousand dollars from Stanfield and Wentworth, giving to them an absolute deed of the realty, under a verbal agreement that Fussell was to remain in possession of the realty and receive a reconveyance on repayment of the money borrowed. In March, 1865, Stanfield and Wentworth wishing their money, and Fussell being unable to pay it, an arrangement was made by which the realty was conveyed by them to William Duff, a brother in law of Fussell, Duff paying to Stanfield and Wentworth their claim against Fussell, and agreeing verbally to convey the realty to Fussell on receiving from him the outlay with interest and expenses, Fussell to remain in possession and to enjoy the realty as his own. These conveyances were all absolute in form. Duff borrowed from John B. Hennessy the money paid to Stanfield and Wentworth. In April, 1866, Duff, being apprehensive of death, called the Fussells and Hennessy to him and conveyed the realty to Hennessy by a deed, also absolute on its face, Hennessy agreeing to hold it as Duff had done; but Fussell, unwilling to trust Hennessy, asked for a statement in writing from Hennessy and received the following bond :

" Know all men by these presents, that I, John B. Hennessy, of the city and County of Providence in the State of Rhode Island, am holden and stand firmly bound and obliged unto Euphemia Fussell, of the city of Roxbury, in Norfolk County, Massachu-

setts, wife of John Fussell, in the full and just sum of six thousand dollars, to be paid unto said Euphemia Fussell, her executors, administrators, or assigns, to which payment well and truly to be made I bind myself, my heirs, executors, and administrators firmly by these presents.

" Sealed with my seal, dated the fourth day of April, in the year of our Lord one thousand eight hundred and sixty six.

" The condition of this obligation is such that whereas William Duff, of said city of Providence, is now indebted to the said John B. Hennessy in divers sums of money, and whereas the aforenamed John Fussell, the husband of the aforenamed Euphemia Fussell, is indebted to the said William Duff in divers sums of money, and whereas the aforenamed William Duff has by his deed of even date herewith conveyed to him the above bounden John B. Hennessy certain parcels of land, a part situated in said city of Roxbury, and a part in the town of West Roxbury in said County of Norfolk, and whereas the said John B Hennessy has agreed that upon the full payment of the amount so due and payable to him from the said William Duff and all costs and expenses to which he may be subjected in the collection thereof, and also upon the full payment of the amount due and payable from the said John Fussell to the said William Duff and all expenses incidental to the collection thereof, he the said John B. Hennessy will convey to her the said Euphemia Fussell or her assigns said parcels of land so conveyed as aforesaid to him the said Hennessy by the said William Duff, or so much of said land as may not have been required for the final payment of the amount so due to said Hennessy by said Duff, and the amount so due to the said Duff by the said Fussell. Now, therefore, if upon the full payment of all sums due and payable by the said William Duff to him the said Hennessy, and upon the full payment of the amount so due and payable from the said Fussell to him the said Duff, together with the interest and costs and expenses incident to the collection of the said several sums, the said John B. Hennessy, his heirs, executors, and administrators, shall convey to her the said Euphemia Fussell or her assigns said parcels of land so conveyed to him the said Hennessy by him the said Duff, or so much of said land as may not have been required for the purpose of said

payments, then this obligation is to be void, but otherwise to be and remain in full force and effect.

                                        " JOHN B. HENNESSY.
" Executed in presence of
       FRANCIS PARKINSON."

Fussell remained in possession of the realty.

Euphemia Fussell died December 12, 1866, leaving a son, John Fussell, Junior, her sole heir. John Fussell, her husband, was appointed her administrator.

March 6, 1871, Hennessy sold the realty to Seaman Klous for twenty five thousand dollars, without notice to the complainants.

The bill prays for an account, and that Hennessy may be declared a trustee of the complainants for the surplus of the twenty five thousand dollars over the amounts found due to him.

The respondent pleaded in bar a judgment of the Supreme Judicial Court of Massachusetts, rendered in an equity case wherein the present complainants were complainants, and Seaman Klous and John B. Hennessy were respondents. This plea was overruled, and the respondent answered claiming the same benefit as if he had demurred or pleaded: *first*, setting up the statute of limitations, the bill was filed in 1880; *second*, making the answer in the Massachusetts suit a part of his answer; *third*, denying any agreement between the complainants and himself; *fourth*, denying that he held or had held any surplus. February 24, 1883, a decree was made establishing a trust in favor of the complainants on whatever surplus Hennessy might hold, and the case was sent to a master to take the account. The master filed his report June 4, 1883, and the case came before the court on exceptions to the report.

*July* 12, 1884. DURFEE, C. J. We have come to the conclusion that the suit is not maintainable by the complainants, as husband and as heir at law of the late Euphemia Fussell, to enforce a trust created in her favor on the land mentioned in the bill. The language in the condition of the bond which is relied on to establish the trust is evidence of an agreement on the part of the defendant to convey said land to said Euphemia on payment by her of the debts for the securing of which he held it, or, resort being had to the land for their payment, to convey to her so much of the

land as should not be required for their payment. Such an agreement might amount to a trust if the land was conveyed to the defendant on the faith of it, the grantor having the power to convey it on such trust. But the grantor had no such power. He held the land simply as security, subject to a resulting equity or trust in the complainant, John Fussell, Senior. To create such a trust, John Fussell, Senior, should have joined in the conveyance, or in some other way released his resulting interest for the purpose of it. The agreement was without consideration, and therefore, considered as an agreement simply, it could not create a trust which could be enforced in equity.

We think the only ground for the suit is that the defendant held the land as security only, subject to a resulting trust or equity in favor of John Fussell, Senior, and that after he had sold it he held the proceeds, or rather the surplus of the proceeds beyond what was necessary for the payment of the debts secured, subject to the trust or equity. The defendant sold the land March 6, 1871, and was paid for it March 7, 1871. This suit was not commenced until December 28, 1880. The defendant sets up the statute of limitations in bar of the suit. Is the defence good ? The rule is that in cases of concurrent jurisdiction courts of equity are bound by the statute equally with courts at law, and that in many cases where the jurisdiction is not concurrent they apply the statute by way of analogy. Wood on Limitations, § 58, and notes. We think the surplus was probably recoverable at law, in an action for money had and received. 1 Jones on Mortgages, § 341 ; *Vandusen* v. *Worrell*, 5 Abb. Pr. N. S. 286 ; *Arms* v. *Ashley*, 4 Pick. 71. Such a surplus, arising under a mortgage in the usual form with power of sale, may be so recovered. *Jackson* v. *Stevens*, 108 Mass. 94 ; *Cook* v. *Basley*, 123 Mass. 396 ; *Buttrick, Adm'r,* v. *King, Adm'r,* 7 Met. 20 ; *Cope* v. *Wheeler*, 41 N. Y. 303 ; *Hiester* v. *Maderia*, 3 W. & Serg. 384. If the surplus here was not recoverable, it is because the deed, being absolute on its face, would not be recognized as a mortgage at law. But if the only remedy was in equity, we think that nevertheless the statute would apply by analogy ; for we can see no reason why such a mortgagor by equitable construction should have any advantage in this respect over an ordinary mortgagor. 1 Jones on Mort-

gages, 3d ed. § 341; *Hancock* v. *Harper*, 86 Ill. 445. Here, moreover, there was an adverse holding known to the complainant, which would bring the statute into operation even though the trust were express. 2 Perry on Trusts, §§ 864, 865; *Wilson* v. *Green, Weare & Benton*, 49 Iowa, 251. We think, too, that the suit might have been maintained immediately after the sale, for it was the duty of the defendant to pay over the proceeds, except what he had a right to retain, to the parties respectively entitled thereto without delay.

This case was sent to the master by interlocutory decree before it was decided whether the statute would apply or not. The question was raised, but it was only slightly argued, the defendant's counsel passing to other points on being reminded that the bond which was then put forward as the ground of relief was under seal. It thus happened that the court gave it no further consideration. We do not think it can be said that the defendant waived it, nor do we think he is precluded from raising it anew by the interlocutory decree, such a decree being open to revision on final hearing. *Fourniquet* v. *Perkins*, 16 How. U. S. 82. We do think, however, that the defendant was in fault in that he did not, if he meant to insist upon it, recall the attention of the court to it again before the decree was entered, and so save the expense of the hearing before the master. Therefore while we dismiss the bill, we shall dismiss it without costs and without prejudice to any action at law which may hereafter be brought on the bond.

*Decree accordingly.*

*William W. Douglass & Charles E. Gorman*, for complainants.
*William H. Greene & Patrick J. McCarthy*, for respondent.