## JACKS and others *vs.* NICHOLS.

Where a contract was made between borrower and lender, fór the surrender, by the lender, of notes and securities given by the borrower upon obtaining a usurious loan in the state of New-York, and for giving further time for payment, on the receipt of new securities for the amount; in pursüance óf which contract, new notes, made and dated in New-York, were delivered to, and received by, the lender, in the state of C., where he was then staying, who then and there delivered up and surrendered to the borrower the former notes and securities; *Held* that the new contract, as an entire thing, must be considered as having been made in the state of C.

And no place of payment being specified in the new notes, and it not being shown that New-York was designated by the parties as the place of performance, or that the new contract was made with a view of being governed by the laws of this state; *Held also,* that the law of the place where the contract was made must govern as to its nature, validity and effect.

And such contract, if valid by the laws of the state where it was made, will not be rendered invalid, here, by reason of usury in the contract for the original loan.

It is competent for the parties to an usurious agreement, to free it from its illegal qualities. The excess of interest may be rejected by the lender, and stricken out of the contract; and the borrower may enter into a new and valid obligation to pay the sum originally loaned, with lawful interest.

This may be done in the presence of the statute of usury, and at the place of the original contract.

Such new agreement is sanctioned as well by the law, as by sound morality. *Per* HURLBUT, P. J.

If the parties to a usurious agreement for a loan, after the making of the same, transfer the scene of their negotiations to another state, where any contract respecting the use of money is valid, which does not violate the principles of natural justice, and they there cancel the securities taken upon the original contract, and make a new one upon the subject of the original loan, re-affirming it, and binding the borrower to pay after a season of forbearance, which forbearance forms a part of the consideration of the new agreement, such new contract is not tainted with usury.

There is a sufficient consideration for such new agreement, in the surrender of securities *prima facie* binding upon the parties; and in the moral obligation resting upon the promiser to refund the money borrowed by him, with lawful interest.

IN EQUITY. This was an appeal by the defendant, from a decree of the former assistant vice chancellor of the first circuit.

The case in the court below is reported in 3d *Sandford's Chancery Reports*, 313; where the facts are fully stated.

*B. W. Bonney*, for the appellant.

*Jas. M. Smith, Jun.* for the respondents.

*By the Court*, HURLBUT, P. J.   We think there can be no reasonable doubt that the contract for a loan between the parties was tainted with usury, if not in its inception, certainly upon the renewal of the securities given by the Messrs. Jacks; and the only ground of defence set up against the plaintiffs' bill, which we esteem capable of being urged by the defendant, is based upon the allegation that the subsisting contract between the parties was made in the state of Connecticut, and that effect must be given to it according to the laws of that state, which for the purposes of this case, are silent on the subject of usury.

The defendant's answer, which is responsive to the bill, and must be deemed controlling on this point, contains the following history of the transaction : That before the month of June, 1842, Pulaski Jacks applied to the defendant, who was then staying at Bridgeport, in the state of Connecticut, for a further loan of the sum of $3792,36, or for an extension of the time for the payment of the amount secured by certain notes then about to fall due, and which had been given in renewal of the credit upon the original loan ; and that upon this application, Jacks offered, as security for the payment of the said amount, to deliver to the defendant a note for $5300, made by Tyler & Jacks of New Orleans.   That the defendant finally acceded to this proposal, and consented to loan for a further time the amount of $3792,36; but the particular terms of this loan or renewal were not agreed upon until about the 6th of June, 1842, when the Messrs. Jacks, or one of them, sent to the defendant who was then at Bridgeport, Conn., their note, dated New-York, June 1, 1842, for $100, payable in six months, to the order of Price, and by him endorsed ; also, their note dated

Jacks *v* Nichols.

New-York, June 18, 1842, for $792,36, payable nine months after date to the order of Samuel Jacks, and by him endorsed ; also their note dated New-York, June 18, 1842, payable in twelve months to Samuel Jacks, and endorsed by him and W. A. Woodruff; and the note of P. & H. Jacks, dated New-York, 4th of June, 1842, for $264,60, at four months, payable to the defendant's order ; and also the note of Tyler and Jacks, dated at New Orleans, in Feb. 1842, for $5300, payable in two years at the Mechanics' Bank in the city of New-York, to the order of P. Jacks & Co. and by them endorsed ; *which five notes were delivered to and received by the defendant, in Bridgeport, in the state of Connecticut, on the 7th day of June,* 1842, *and he then and there delivered up and surren dered three former notes of the Messrs. Jacks, together amounting to* $3792,36, *and all other securities which he then held for the payment of that sum or any part thereof ; which three notes and other securities were all received by the said P. & H. Jacks or one of them.*

It appears then that the Messrs. Jacks applied to the defendant, at Bridgeport, and asked him to surrender all the securities which had been delivered to him upon the renewal of the original loan, and to receive in their stead the five notes before specified. The defendant agreed to do so ; and did surrender the securities which he then held. He also received new undertakings, and gave further time for payment. This arrangement was consummated at Bridgeport.

The makers of some of the notes delivered on this occasion, resided in New-York—the makers of one of the notes resided in New Orleans; the notes of the Messrs. Jacks were dated at New-York—the note of Tyler and Jacks was dated at New Orleans ; and the latter note was made payable in New-York, while the former notes contained no place of payment. But these facts do not aid us in fixing the place of the contract which the bill in this case seeks to avoid. If these five notes had been made payable in as many different states, it would not have severed the contract, and subjected it to the interpretation of as many different laws. The general contract in the

case is the one against which the complaint is directed, and that is the matter to be kept in view; to wit, the contract for the cancelment and surrender of the former evidences of debt—the receipt of new securities, and for giving further time for payment.

The Messrs. Jacks obtained, on the occasion referred to, the same discharge from their liabilities as they would have got upon a payment of them, and they entered into a contract to pay, as they would have done upon a new loan. The actual payment was not made, nor was there a new advance of money by the defendant; but there was nevertheless a good consideration for the new securities. These were delivered in Connecticut, upon a surrender there of the former notes; and it seems to us that the contract, as an entire thing, must be regarded as having been made in that state.

The rule then is, that the law of the place where the contract was made is to control it, unless it appear upon the face of the contract, that it was to be performed at some other place; or was made in reference to the laws of some other place; in which case, the law of the latter place is held to control. (*Sherrill* v. *Hopkins*, 1 *Cowen's R.* 103. 2 *Kent's Com.* 459, 460. 4 *Cowen*, 511, *n.*)

No place of payment is appointed in the notes of the principal debtors, in the present case; and it is not shown that New-York was designated by the parties as the place of performance, or that the contract was made with a view of being governed by the laws of this state. In such a case the law of the place where the contract was made, must govern, as to its nature, validity and effect. (*See Smith* v. *Mead,* 3 *Conn. R.* 253.)

But the learned assistant vice chancellor said, "that even if the negotiation had been made, and the new notes signed and delivered in Connecticut, it would not in his view have altered the case in the least, since it was merely the continuation of the original loan for a longer period; whether new securities were taken, or a covenant executed for forbearance on the old securities, the substance of the thing is the same. That there was no new loan, no new consideration, save the forbearance, and for that interest was to be paid." And he held the new

contract, although made in Bridgeport, void, on account of the original taint of usury in the loan made in this state. To this we cannot agree. It is competent for the parties to an usurious agreement to free it from its illegal qualities. The excess of interest may be rejected by the lender, and stricken out of the contract, and the borrower may enter into a new and valid obligation to pay the sum originally loaned, with lawful interest. This may be done in the presence of the statute of usury, and at the place of the original contract. Such new agreement is sanctioned as well by the law as by sound morality.

Now instead of purging the contract of the excess of interest at the place where it was made, (the only occasion for which is, the presence of the statute of usury,) the parties transfer the scene of their negotiations to another state, where any contract respecting the use of money is valid, which does not violate the principles of natural justice, and there cancel the securities taken upon the original agreement, and make a new one upon the subject of the original loan, re-affirming it, and binding the borrower to pay after a season of forbearance, which forbearance forms a part of the consideration of the new agreement; how can it be said that this contract is tainted with usury? The taint of usury is not recognized by the law of the place where it is made. There a party may agree to pay what he pleases, either for the past, or the present use of money; and hence it appears to us that the new contract would be valid. Viewed as an agreement made in a state whose laws are silent on the subject of usury, it must be considered as much divested of the taint of usury, as if it had been expressly purged of it, by the agreement of the parties made at the place of the original loan. (*De Wolf* v. *Johnson*, 10 *Wheat. Rep.* 367.)

But it will be said that there is no consideration for this agreement; the original contract being void. There is the surrender of securities, which were *prima facie* binding upon the parties; and especially is their money actually lent and advanced to the promiser, which creates at least a moral obligation on his part to refund it with lawful interest; an obligation

The People *v.* The Mayor, &c. of New-York.

which, in the face of the statute of usury, has always been recognized in a court of equity, and which we do not doubt affords a sufficient consideration to support the new contract.

This contract, in the absence of any proof to the contrary, is to be intended as legal and binding upon the parties. Having been made in the state of Connecticut, and therefore to be construed by the laws of that state, it is for the plaintiffs to show that by these laws the contract is void, before they can be entitled to the relief prayed for in their bill.

The decree of the assistant vice chancellor must be reversed, and the plaintiffs' bill must be dismissed with costs.

SAME TERM.  *Strong, Hurlbut, and Edwards,* Justices.