Gkay, J.
 

 The answer of the defendant under oath was asked for by the complainant, and is, therefore, of itself, equal to the evidence of one witness in favor of the defendant. This answer the defendant insists has not been overthrown by the evidence of Young, by
 
 *179
 
 whose testimony it is shown, that the funds upon which the defendant drew were, in fact, in New York, at the date of the written proposition of the plaintiffs, which was acceded to by the defendant, and which fixes the terms of the loan, except as to time and security. The defendant and Young stand before us as two witnesses called by the complainants, and their evidence must, when in conflict with each other, balance the one against the other, unless, from the circumstances of the case as detailed, the unreasonable or evasive statements of the one give a preponderance to those of the other.
 
 [1]
 
 The complainants allege that at the time of negotiating the loan, the defendant said, “his money had cost him five per cent, exchange to get it on from Savannah, and that he had been offered twelve per cent, interest by other persons.” This allegation is not denied. It is true, that the defendant, in his answer, said, that his funds were principally in Savannah, and that at the time of making the loan, *the sums of money lent by him were actually brought on or transferred to the city of New York, for the purpose of making the loan. All this may be true, and not one cent of it there, when the written proposition, acceded to by the defendant, was made. Tie might, and probably did, from previous negotiations, contemplate this loan when he transferred his funds,- but when the loan was, in fact, made, there is nothing to 'contradict the statement of Young, that the funds loaned were then in New York. The defendant’s statement that it had cost him five per cent, to get them there, and that he had been offered twelve per cent, interest by others, doubtless, induced the offer, accepted by him, of the commissions on sales, in addition to what had been offered, to render sure his acceptance of their proposition. The facts, therefore, independently of the
 
 *180
 
 evidence furnished by the accepted proposition, on its face, exhibit what the vice-chancellor very properly characterized as “ a case of unmitigated usury which was increased by the loan in 1841.
 

 In this_ respect, the supreme court did not differ in their conclusions from the vice-chancellor, but reversed his decree, upon the ground that the release in 1842 of the whole principal sum loaned, was in Bridgeport, Connecticut, where, for aught that appears, any contract made for the use of money, past or present, not in violation of the principles of natural justice, is valid. This conclusion was arrived at from statements made in the defendant’s answer under oath called out by the complainants. In order to justify such a conclusion from the defendant’s own statement, it should appear clearly, that the new contract was made in Connecticut, and that the parties designedly contracted there rather than in New York. (Story on Conflict of Laws, § 294.)
 

 The answer states, that shortly before the maturity of the notes given in June 1841, Jacks applied to the defendant, who was then staying at Bridgeport, Connecticut, for the further loan of the several sums about to become due, and offered to deliver to him the note of Tyler & Jacks for $5300; and that the defendant, thereupon, consented to reloan *the several sums, for a further time. The fact that the defendant was then
 
 staying
 
 in Connecticut, by no means proves that he was there, at the time of this application. Connecticut was not his residence, he was there temporarily, and if, in the time, he had visited New York, and been asked where he was staying, a natural and truthful answer would have been, in Bridgeport. The answer, therefore, does not show affirmatively that the application was made to him in Bridgeport. It shows him in New York, at the request of the Messrs. Jacks, previously to the maturity of the notes, and that, in their renewal, he was. allowed $10 for his expenses in travelling from Bridge
 
 *181
 
 port to and from New York. The fact that the expenses of the journey were included in the renewal of the loan, affords a fair presumption that it was upon the business of the reloan that he visited New York, and that the renewal of the loan was there agreed upon. But it is said, that the particular terms were not fixed, until the several notes were sent to the defendant at Bridgeport, on the 6th of June following. The loan itself was agreed upon, but the period for payment and rate of compensation were not agreed upon, until the defendant received the notes from the plaintiffs, accompanied by a statement of the purposes for which they were given.
 

 But concede that the last contract was made in Connecticut, if it was to be performed in New York, it must
 
 primd facie
 
 be regarded as having been made with reference to the laws of New York. (2 Kent’s Com. 460, note a.)
 
 [2]
 
 Upon this single last occurrence, the consummation of what had been previously partially agreed upon, depends the question, whether the renewal of the loan was made with reference to the laws of Connecticut, or those of New York, where the original loan was made and once renewed. Every circumstance shows that it was with reference, to the laws of the latter state. Neither party resided in Connecticut; the defendant was there temporarily, having no place of business there; the plaintiffs resided in this state. The contract renewed was a New York contract; the note of Tyler & * Jacks was payable in New York; the notes of the Messrs. Jacks were dated in New York, and the portion of the note of $264.60, set apart for interest, was, if the defendant is to be believed, intended to secure seven per cent, interest, the legal rate of this state. The fact that the note was dated in New York is
 
 *182
 
 alone presumptive evidence that the maker not only resided at the place of its date, but contemplated payment there. (3 Kent’s Com. 96.) And, for the purpose of charging the indorsers upon the notes, the makers must have been sought at their residence or place of business in this state. In doing'that, reference must have been had to the days of grace given by the laws of this state. (2 Kent’s Com. 459; 3 Id. 96;
 
 Bank of Orange
 
 v.
 
 Colby,
 
 13 N. H. 520.)
 

 It is, therefore, manifest, that the continuance of the loan, made here upon substituted securities, partially agreed upon in this state, and consummated in Connecticut, was all done with reference to the laws of this state, and that it was but the continuance of an original usurious loan, aggravated by each renewal, and void by our laws. The judgment of the supreme court must, therefore, be reversed, and that of the vice-chancellor affirmed.
 

 Judgment reversed, and that of the vice-chancellor affirmed.
 

 [1]
 

 The equity rule, which requires more than the testimony of a single witness to overcome a responsive answer, does not apply to pleadings under the code. Stilwell
 
 v.
 
 Carpenter, 2 Abb. N. C. 238.
 

 [2]
 

 A note made, dated and payable in this state, though negotiated in a foreign country, is governed hy the latvs of New York, as to the defence of usury. Dickinson
 
 v.
 
 Edwards, 7" N. Y. 573; s. c. 13 Hun 405; Clayes
 
 v.
 
 Hooker, 4 Ibid. 231.