SOPHIA M. SHELDON, as Administratrix, etc., Respondent, *v.* WILLIAM E. HAXTUN, Appellant.

Defendant, who resided in Illinois, having collected certain moneys belonging to S., a resident of this State, by an agreement with the latter sent to him by mail, in place of the money, his (defendant's) notes for

the amounts, dated at his place of residence in Illinois, payable with ten per cent interest, which rate of interest was lawful in that State. In an action upon the notes wherein the defense of usury was pleaded, *held*, that their validity was to be determined by the law of Illinois, and as they were valid there they were valid here ; and this although one of the notes was made payable in this State.

Defendant was formerly a resident of this State. When here he borrowed of S. $1,500, giving his note therefor, executed here but dated at a place in Illinois, payable with ten per cent interest. After the defendant had become a resident of Illinois S. sent the note, which was then past due, to him by mail, requesting a new note for the balance of principal unpaid, this defendant sent by mail, the new note being dated in Illinois, payable one year from date, with ten per cent interest. *Held* (ANDREWS, Ch. J., and MILLER, J., dissenting), that although the original note was usurious and void, yet, in the absence of any evidence of an intent to evade the usury laws of this State, the new note was to be regarded as an Illinois contract ; that the surrender of the old note was a good consideration therefor ; and that it was valid.

Where a usurious contract is mutually abandoned by the parties and the securities given therefor canceled and destroyed, a subsequent promise by the borrower to pay the money actually loaned is not tainted by the original usury, is for a good consideration, and can be enforced.

(Argued October 25, 1882 ; decided January 23, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made February 15, 1881, which affirmed a judgment in favor of Jeremiah Sheldon, the original plaintiff, entered upon a verdict. After judgment was perfected on the verdict, Sheldon died, and the present plaintiff, his administratrix, was substituted. (Reported below, 24 Hun, 196.)

This action was brought upon five promissory notes, given by the defendant to said Sheldon, all dated at Kewanee, Illinois, and all made payable, with interest at the rate of ten per cent. The defense was usury. Four of the notes were given under the following circumstances : In 1870, both of the parties being then residents of this State, defendant sold to Sheldon five notes of $500, payable with ten per cent interest, executed in Illinois by a resident thereof, secured by mortgage upon land near Kewanee, in that State. Defendant subsequently removed to

Illinois and these notes were delivered to him for collection. He collected them as they became due, with the interest, and under an agreement with Sheldon, sent to him by mail his own notes for the amounts collected, which were the notes in question. The fifth note was given under the following circumstances: In September, 1870, before defendant moved to Illinois, but when he had it in contemplation, Sheldon loaned to him here $1,500, taking his note therefor, dated at Kewanee, but executed in this State, payable with interest at the rate of ten per cent per annum. The interest was paid by defendant at the rate fixed up to 1876. On September 14, 1876, defendant, who was then residing at Kewanee, in Illinois, sent to plaintiff a draft on New York for $650, to pay the year's interest, and $500 of the principal. Plaintiff acknowledged the receipt by letter and inclosed therein the note, which was long past due, requesting defendant to send a new note, dated September 25, 1876, for the $1,000 of principal unpaid, giving as a reason that there was no room upon the old note to make the proper indorsement. In compliance with the request defendant sent the note in question for the $1,000, payable one year from date, with ten per cent interest.

*C. B. Herrick* for appellant. The evidence shows a complete contract between residents of this State for the loan of money made within this State upon a note made and delivered in this State and not to be repaid elsewhere, and it must, therefore, be governed by the laws of New York. (Story's Conflict of Laws, §§ 278a, 282; *Curtis* v. *Leavitt,* 15 N. Y. 88; *Jewell* v. *Wright,* 30 id. 264; *Cope* v. *Wheeler,* 41 id. 303; 53 Barb. 350; *Merchants' B'k* v. *Griswold,* 72 N. Y. 481; *Evans* v. *Anderson,* 78 Ill. 558; *Dickinson* v. *Edwards,* 77 N. Y. 576; *Tilden* v. *Blair,* 21 Wall. 241; *Richardson* v. *Draper,* 23 Hun, 188; *Williams* v. *Fitzhugh,* 37 N. Y. 444.) Usury contaminates all subsequent securities. (*Price* v. *Lyons B'k,* 33 N. Y. 55; *Cope* v. *Wheeler,* 41 id. 303; 53 Barb. 350; *De Wolf* v. *Johnson,* 10 Wheat. 383; *House* v. *Davis,* 60 Ill. 367.) The law of the place of the actual making of the con-

tract must govern as to the validity or invalidity thereof. (*Wayne Co.* v. *Low,* 81 N. Y. 566; *West. Trans. C. Co.* v. *Kilderhouse,* 87 id. 430; *Millikin* v. *Pratt,* 24 Alb. L. J. 111; 125 Mass. 374; *Cook* v. *Litchfield,* 9 N.Y. 279; *Gray* v. *Ramsey,* 89 Ill. 221.) The obligations evidenced by these notes were purely personal. (*Chapman* v. *Robertson,* 6 Paige, 627; *Bryant* v. *Edson,* 8 Vt. 347; *Hyde* v. *Goodnow,* 3 N. Y. 266; *Lee* v. *Selleck,* 33 id. 615.)

*Henry M. Taylor* for respondent. Where the parties to a contract for the loan of money intend, in good faith, to make the contract subject to the laws of another State, to which it conforms, and under circumstances which justify that intention, and show that it was not intended as an evasion of the usury laws of this State, the courts of this State will sustain and enforce the contract, although it would be invalid if subject to the laws of this State. And this, although one or both of the parties reside in this State, provided it is so made payable here, " not as an essential part of the contract or with the intent to affix a legal consequence to the instrument." (*Chapman* v, *Robertson,* 6 Paige, 627; *Platt* v. *Adams,* 7 id. 616; *Balme* v. *Wamburgh,* 38 Barb. 352; *B'k of Georgia* v. *Lervin,* 45 id. 340; *Dickinson* v. *Edward,* 77 N. Y. 576; *Wayne Co. Savings B'k* v. *Low,* 81 id. 571; *Tilden* v. *Blair,* 21 Wall. 241; *Potter* v. *Tallman,* 35 Barb. 182; *Cutler* v. *Wright,* 22 N. Y. 472.) A contract is to be governed by the laws of the place where it is made, if it is not to be performed by its terms elsewhere. (*Jewell* v. *Wright,* 30 N. Y. 264; *Merchants' Bank* v. *Griswold,* 72 id. 480; *Dickinson* v. *Edwards,* 77 id. 576.) The fact that the money for the $1,500 note, the original of the $1,000, was advanced to defendant at plaintiff's residence in this State is not material. (*Potter* v. *Tallman,* 35 Barb. 182.)

ANDREWS, Ch. J. The defense of usury was not established as to the four notes given for money collected by the defendant on the notes and mortgage owned by the intestate. The notes

so collected and the mortgage given to secure them, were transferred by the defendant to the intestate in the spring of 1875. They were Illinois contracts, and the notes were payable with interest at the rate of ten per cent, per annum. The intestate paid to the defendant as the consideration of the transfer, the full amount of principal and interest unpaid on the securities. When this transaction took place the parties were both residents of this State. But the defendant was then contemplating removing to Illinois, and did remove there prior to the maturity of the first note. By an arrangement between the parties, the defendant collected the first note when due from Hopkins and Roberts, the makers, and retained the money so collected, and in place thereof sent by mail to the intestate in this State, his own note for a similar amount, dated Kewanee, Ill., his place of residence, payable with interest at ten per cent per annum, that being the lawful rate of interest in that State. The same arrangement was made in respect to each successive note collected by the defendant. The defendant collected from the parties in Illinois, and instead of remitting the proceeds, sent his own note for the same amount, specifying the same rate of interest as was named in the note collected. The transaction was in substance a loan by the plaintiff's intestate, a resident of New York, to the defendant, a resident of Illinois, in the latter State, of funds there held by, and belonging to, the former, at a rate of interest lawful in Illinois. If the plaintiff's intestate had gone in person to Illinois, and collected the notes, and then lent the money to the defendant at ten per cent interest, there could we apprehend be no question as to the lawfulness of the transaction, although the notes were payable in this State. (*Pratt* v. *Adams*, 7 Paige, 616; RAPALLO, J., in *Wayne Co. B'k* v. *Low*, 81 N. Y. 572; 37 Am. Rep. 533.) Nor could it we conceive alter the case if the negotiation for the loan was made in this State, and afterward consummated and the transaction completed in Illinois, the transaction being *bona fide*, and there being no intent thereby to evade the laws of this State. The dealing, for the purpose of determining the question of usury, would be assigned to the

place where the funds were and where the loan was consummated. What occurred between the parties was equivalent to the plaintiff's intestate going to Illinois and there making the several loans to the defendant. The funds were there in possession of the defendant as agent. He was permitted to retain them, and became a debtor for the amount. Upon depositing the notes in the mail the transaction was complete. The money became the defendant's, and the notes the property of the intestate. The defendant became the borrower of the proceeds of the notes collected by him. The fact that one of the notes was expressly payable in this State does not distinguish it in the point of usury from the others. This was an incidental circumstance and does not overthrow the other decisive circumstances which make Illinois the place of contract. (*Tilden* v. *Blair*, 21 Wall. 241; *Wayne Co. B'k* v. *Low, supra.*) For these reasons we are of opinion that the defense failed, as to the four notes referred to.

The defense as to the note of September 21, 1876, for $1,000, being the fifth cause of action set forth in the complaint, is founded upon a different transaction, and as to this note we think the fact of usury was established. The note of September 21, 1870, for $1,500 was made and delivered in this State upon a loan of that amount made here at the time by the plaintiff's intestate to the defendant, both parties being then resident here. This was plainly a New York contract, and its validity is governed by the law of this State, and as such it was plainly usurious. The delivery of the note at Kewanee, Ill., did not make that the place of the contract, nor is it material that the borrower was about to remove to that State, or intended to use the money there. (*Cope* v. *Wheeler*, 41 N. Y. 303.) The sole consideration of the note of September 21, 1876, was the balance then unpaid on the note of September 21, 1870. It was given at the request of the plaintiff's intestate, because there was no room for more indorsements of payments on the original note. The surrender of the old note and the extension of time was ample consideration for the new note, but the substituted security was tainted with the vice of the original

transaction. We need not consider how the courts of Illinois would deal with the question if the suit had been brought in that State. The fact that the original loan was at a rate of interest lawful in that State, does not make the contract lawful here, nor does the fact that the new note was made in that State and prescribed a rate of interest lawful there, take it out of the operation of the well-settled doctrine that a new security for a usurious debt is affected by the usury in the original transaction. (*Tuthill* v. *Davis*, 20 J. R. 286; *Reed* v. *Smith,* 9 Cow. 648.)

But the majority of my brethren are of opinion, for the reasons stated in the opinion of EARL, J., that the note of September 21, 1876, is to be treated as an Illinois contract, and is not usurious.

The judgment of the General Term should therefore be affirmed, with costs.

EARL, J. I concur fully with the chief judge as to the four notes mentioned in the first four counts of the complaint, but I differ with him as to his conclusion in reference to the note for $1,000, mentioned in the fifth count of the complaint, and I will briefly state the grounds for my difference:

For precisely the same reasons stated by the chief judge for holding that the four notes must be regarded as Illinois contracts, this note must be so regarded. I agree that the original note for $1,500 was a New York contract, and, therefore, usurious and void. After that note had been long past due, and numerous payments had been made thereon, on the 14th day of September, 1876, the defendant, who was then a resident of the State of Illinois, sent to the plaintiff, who was a resident of this State, a draft on New York for $650, being the interest at the rate of ten per cent on the note, and $500 to be applied upon the principal. On the 25th of September the plaintiff acknowledged the receipt of the draft in a letter which he wrote to the defendant addressed to him at his place of residence, in which he inclosed the note for $1,500, saying that there was no room to make the proper indorsements thereon, and requesting

him to send a note dated September 25, 1876, for the $1,000 of principal remaining due to him upon the note. In pursuance of that request the defendant executed the note for $1,000, payable in one year from date, with interest at ten per cent. The note was executed in Illinois at the place of defendant's residence, and expressed no place of payment, and was forwarded to the plaintiff in this State by mail. There was no evidence tending to show that there was any intention on the part of either of the parties to evade the usury laws of this State, and the note was manifestly executed with reference to the laws of the State of Illinois, where the maker resided, and where the laws authorized the rate of interest inserted in the note. The note was given in Illinois in exchange for a note there surrendered through the agency of the mail by the plaintiff to the defendant; and when in pursuance of plaintiff's request this note was executed by the defendant and put in the mail, directed to him at his residence in this State, the contract between the parties was complete, and the note then became the property of the plaintiff. If it had been lost in the mails it would have been lost as the property of the plaintiff, and he could thereafter have sued the defendant thereon as upon a lost note. If it had been stolen from the mails, or unlawfully taken or converted, it could have been described in an indictment for the crime as the property of the plaintiff, or could have been recovered by him in an action of replevin, or sued for in an action of trover, claiming it as his property. This must, therefore, be treated as if the parties had met in the State of Illinois, and the plaintiff had there surrendered to the defendant the note for $1,500, and taken from him this note for $1,000 for the balance due upon the prior note; and from these views I do not understand the chief judge to differ.

If this note for $1,000 had been given in this State, even with the lawful rate of interest mentioned therein, in renewal of or in substitution for the prior usurious note, it would also have been tainted with usury and void. A substituted or renewal note thus given is held void for one or both of these reasons: The new note in such a case is given in renewal or

continuance of the usurious contract, and is, therefore, void for the same reason that condemns that contract; or it is a new security for a usurious debt or contract and void on that account. In either case the new note is void because it comes under the condemnation of the policy and the letter of our usury laws. But a usurious contract can be purged of the taint of usury and money loaned upon a usurious contract can furnish a valid consideration for a promise to pay the money actually loaned. If the usurious contract be mutually abandoned by the parties and the securities be canceled or destroyed so that they can never be made the foundation of an action, and the borrower subsequently makes a contract to pay the amount actually received by him, this last contract will not be tainted by the original usury and can be enforced. (*Hammond* v. *Hopping*, 13 Wend. 505; *Kilbourn* v. *Bradley*, 3 Day, 356; *Houser* v. *The Planters' B'k*, 57 Ga. 95; *B'k of Monroe* v. *Strong*, Clark's Ch. R. 76.)

The note for $1,500 when it reached the State of Illinois was not a note condemned by any law of that State. It was not there illegal or tainted with usury, for the reason that the laws of New York were not operative there. It was simply subject to the defense on the part of the defendant of being unlawful because made in violation of the laws of the State of New York, where it was executed. It was a note void, not by the laws of the State of Illinois, but void under the laws of the State of New York. It had no other infirmity in the State of Illinois than that the defendant could defeat a recovery upon it if sued thereon anywhere, for the reason that it was void at the place where it was given. If he had paid on the note in Illinois a rate of interest illegal under the laws of the State of New York, such interest could not, by virtue of the usury laws of this State, have been recovered back in Illinois, or in this State; and neither could the plaintiff, under the laws of this State, be indicted for taking the usury there. It seems to me then that the only inquiry is whether the balance due upon the note for $1,500 and the surrender of that note furnished a valid and legal consideration for the note of $1,000; and that it did is too clear for reasonable dispute.

A valid promise to pay money loaned upon a usurious contract which in some lawful way has been purged of its usury is always founded upon a sufficient consideration. In *Hammond* v. *Hopping* it was said that such a promise "is founded upon an equitable and moral obligation, which is sufficient to support an express promise. The money actually lent, when legally separated from the usurious premium, is a debt in equity and conscience, and ought to be repaid. This is the settled doctrine of a court of equity, for there the borrower will not be relieved from an usurious contract, except upon the condition of refunding the money lent, with legal interest."

Here then was a note legal by the laws of the State in which it was executed, and founded upon a sufficient consideration, and it is difficult to perceive upon what principle it can be held to be void. It was given for the balance of principal actually due upon the prior note which in the State of Illinois was simply void but not illegal; which there a party could voluntarily pay, and, as I claim, could voluntarily renew. And if this note was valid in the State of Illinois where it was given, then under principles of law universally applied it is valid here, and everywhere. The case of *Jacks* v. *Nichols* (5 Barb. 38) is a case precisely in point. It was there held that a new note given in the State of Connecticut at a rate of interest lawful there in the place of, and upon the surrender of a prior note made in the State of New York and there void for usury, was freed from the taint of usury. It is tersely and well said in the opinion of the court in that case "now instead of purging the contract of the excess of interest at the place where it was made (the only occasion for which is the presence of the statute of usury) the parties transfer the scene of their negotiations to another State, where any contract respecting the use of money is valid which does not violate the principles of natural justice, and there cancel the securities taken upon the original agreement, and make a new one upon the subject of the original loan, reaffirming it, and binding the borrower to pay, after a season of forbearance, which forbearance forms a part of the consideration of the new agreement; how can it be

said that this contract is tainted with usury? The taint of usury is not recognized by the law of the place where it is made. There a party may agree to pay what he pleases, either for the past, or present use of money; and hence it appears to us that the new contract would be valid. Viewed as an agreement made in a State whose laws are silent on the subject of usury, it must be considered as much divested of the taint of usury as if it had been expressly purged of it, by the agreement of the parties made at the place of the original loan."

That case was appealed to the Court of Appeals and there the judgment was reversed (5 N. Y. 178), but solely upon the ground that the court, differing from the Supreme Court, found that the new security was a New York contract, and not a Connecticut contract, and it is a just inference from the decision that the court agreed with the Supreme Court in its law, and simply differed from it as to the facts.

In *De Wolf* v. *Johnson* (10 Wheat. 368), a case quite in point, JOHNSON, J., writing in a case where a new security had been given in the State of Kentucky at a rate of interest legal there, in substitution for a security given in the State of Rhode Island, which was claimed to be usurious there, said: " It is not very easy to discover how the taint of Rhode Island usury can infuse itself into the veins of a Kentucky contract. The defense would not admit of a moment's reflection if it rested on the direct effect which laws against usury have upon contracts. Whatever sums may have been derived through the usurious contract of 1815 (the Rhode Island contract), to the contract of 1817 (the Kentucky contract), they would not affect the latter with usury, unless introduced in violation or evasion of the laws of Kentucky, for the two contracts are governed by laws that have no connection;" that "it is clear that the Kentucky contract must be considered as a new and substantive contract. It is governed by a distinct code of laws from the Rhode Island contract, and cannot be affected by the taint of usury which might have been transmitted to it under some circumstances, had it taken place in Rhode Island. It was, then, equivalent to a payment and reloan, and no one can doubt that money

paid on an usurious contract is not recoverable back beyond the amount of the usury paid." To the same effect is the case of *Houser* v. *Planters' Bank (supra)*.

I am, therefore, of the opinion that the plaintiff was entitled to recover upon the note for $1,000 as upon an Illinois contract, and that the entire judgment should be affirmed, with costs.

MILLER, J. (dissenting.) It is claimed that the note for $1,500 for the balance unpaid, upon which a new note was given in Illinois, was not usurious, because it comes within the principle that a usurious contract can be purged of the taint of usury and the money loaned upon a usurious contract can furnish a valid consideration for a promise to pay the money actually loaned. There is no doubt of the correctness of this rule, and the question here is whether any such case is established within the authorities which are cited to sustain it (*Jacks* v. *Nichols*, 5 Barb. 38; *Houser* v. *The Planters' Bank*, 57 Ga. 95; *De Wolf* v. *Johnson*, 10 Wheat. 368), and which it· is claimed are specially applicable to the facts here presented.

In *Jacks* v. *Nichols (supra)*, it appears that the contract for the new loan, which was made after the first usurious contract had been entered into and carried out, was made in the State of Connecticut between the parties to the same; that the Messrs. Jacks applied to the defendant in that State and asked him to surrender the securities which had been delivered to him upon the renewal of the original loan, and to receive, instead, the five new notes which had previously been agreed upon. The defendant agreed to do so, and did surrender the securities which he then held and received new ones, and gave further time· for payment. Some of the makers resided in New York, one of them in New Orleans. One of the notes was dated in the latter place. It will thus be seen that here was a contract made by parties who were out of the State at the time, and a surrender of old obligations by a previous agreement. The entire arrangement was within the State of

Connecticut, and in this respect the case differs from the one at bar.

In *De Wolf* v. *Johnson* (*supra*), the original contract, which was usurious, was made in the State of Rhode Island, and by the laws of that State was usurious. The subsequent contract, in which a mortgage was given, was executed in Kentucky, and had its inception from an intimation of the borrower of a design to avail himself of the plea of usury. Upon this the plaintiff repaired to Kentucky, instituted new negotiation with the obligee, having for its object to clear the contract from all usurious incidents and to take securities for the sum loaned at the legal interest in Kentucky, which, as well as in Rhode Island, was six per cent. Accordingly, all the instruments in writing which appertained to the old contract were surrendered and a new mortgage given to secure the balance, the original sum having been reduced by large actual payments. It will be noticed that here was a new agreement, entered into for the very purpose of purging the original contract from the taint of usury, which was not usurious by the laws of the State in which it was entered into.

In *Houser* v. *Planters' Bank* (*supra*), the notes in suit were given in renewal of two notes previously given for which a usurious rate of interest was paid. Subsequently the usury laws were abolished. The court held that as the consideration was not wholly illegal, but void in part and good in part, and severable, the usurious part should be purged out, and that under the Code, which provides that if the consideration be good in part and void in part, and be severable, it may be sustained for the good part; and also held, that the promise was not illegal, because there was no law against usury at the time. This case does not affect the question whether a new contract, originally usurious, may be purged of the usury by a subsequent agreement.

As no authority exists which holds that the note in question was, under the circumstances, purged of the usury, I concur with the opinion of ANDREWS, Ch. J.

RAPALLO, DANFORTH and FINCH, JJ., concur with EARL, J., as to the $1,000 note; ANDREWS, Ch. J., and MILLER, J., dissent. All concur as to the other notes.

Judgment affirmed.