Van Brunt, P. J.
There does not seem to be any dispute as to the law in this case, both parties referring to the same authorities which appear to establish a well defined and-clear principle. The controversy arises however in the application of these principles to the facts established beyond controversy in'the case at bar. Those facts appear to be as follows:
On the 21st of July, 1884, the plaintiff and defendant entered into a written agreement whereby the defendant agreed to advance to the plaintiff $2,500 prior to the first óf September following and the plaintiff agreed to give to the defendant two notes one for $2,500 and the other for $1,250 payable ninety days from date, and as security for the payment of these notes the plaintiff gave the defendant assignments and a mortgage upon personal property.
That pursuant to this agreement the defendant loaned the $2,500 and the plaintiff gave the two notes and securities mentioned in the agreement.
That when said notes became due, the plaintiff was unable to pay them in full, and when the defendant pressed the plaintiff for payment, $500.00 was paid. Subsequently the defendant; having consulted his attorney, was informed that the arrangements made in July, 1884, was usurious and void, and thereafter, in January, 1885, for the purpose of purging said agreement of usury, the plaintiff consented that a new arragement should be made in which the loan actually made should be extended, and for that purpose the defendant took the agreement of July 21, 1884, and all the papers connected therewith, and with the plaintiff went to his attorney’s office for the purpose of observing such formalities as in Ms professional judgment should be proper, and then and there the defendant delivered the old agreement and papers to Zabriskiet and the plaintiff said he would do whatever the defendant’s attorney thought was necessary to straighten the matter out.
The-learned justice who tried the cause has found that *897 thereupon the defendant’s attorney advised them that the ■old agreement and securities should be given up and a new agreement made for the amount advanced and remaining unpaid, with new and different securities, to which the plaintiff assented, and agreed to come the following day and sign the papers. Upon the following day the plaintiff and defendant attended at the attorney’s office and executed four papers. The first, after reciting that the plaintiff is indebted in the sum of $2,000 to the defendant, and that he is desirous of securing the payment of said sum, as collateral security to the said indebtedness assigns to the defendant the plaintiff’s interest in the stock of certain companies. The second paper was a chattel mortgage to secure the payment of an indebtedness of $2,000. The third was a confession of judgment for $2,000, the facts upon which the debt arose being stated in said confession to be as follows:
“In July and August, 1884, I borrowed of the plaintiff $2,500 in cash, and gave plaintiff my note for $2,500, dated July 21, 1884, to his order at ninety days, payable at the People’s Bank. I have paid only $500 on account of said note, and there is now justly due and owing to said plaintiff on said note the sum of $2,000 with interest thereon from October 23, 1884.”
The fourth paper was an affidavit of the plaintiff herein that he was justly and truly indebted to the defendant in the sum of $2,000, evidenced by a certain promissory note, dated July 21, 1884, with interest thereon from the 23d day of October, 1884, and that he had no offset or defense to the same. The first agreement and the old securities were neither actually destroyed or cancelled, but remained in the hands of the attorney of the defendant.
The learned justice below found the agreement to abandon the old agreements the meeting for the purpose, the delivery of the old agreement and securities to the attorney who drew the new papers, that it was the understanding that the old papers were to be cancelled, but that the actual physical delivery of the same was waived by the plaintiff. If the evidence supported the conclusion that the old agreement and all the securities given thereunder were delivered to the defendant’s attorney for the purpose of surrender upon the execution of the new papers, and that the plaintiff allowed them to remain in the attorney’s hands because he thought them of no value and did not care to take them away, then we think that the transaction resulted in anew obligation freed from the taint of usury. But the proof shows conclusively that the note of $2,500 was never intended to be surrendered, as upon it is based the confession *898 of judgment and the affidavits as to the amount due upon it, and that there were no defenses to it. These papers show that the parties were under the supposition thht if they struck out of the original transaction that part which was tainted with usury, that the balance would be legal. It is evident that the attention of the court below was not-called to this feature resulting from the facts found, and that attention was only directed to the claim that becusse the old agreement and the securities had remained in the defendant’s attorneys hands, there having been no actual physical surrender or cancellation, the requirements of the law were not fulfilled.
This note of $2,500 was usurious in its inception, and there is no possible way in which it could be made good. In Miller v. Hull (4 Denio, 104), the court distinctly lays-down the rule which has been followed in all subsequent-cases upon this point as follows: “There is no possible mode in which a usurious security can be made good; the vices as to such security are incurable; but the parties to a. usurious transaction may doubtless reform it, and by cancelling the usurious securities and giving a new obligation for the real sum which ought to be paid, excluding all usury, the party will be bound. (Citing cases.) Nothing like this was pretended in the present case; the judge-charged the jury that if the mortgage was usurious at first, and the parties afterwards met and reformed it, and took out the usury, it became valid, and the plaintiff could recover upon it. This cannot be sustained in point of law.”'
That case was one of a usurious mortgage, and the parties-endeavored to expunge the usury by crediting therein an amount equal to the sum included in it for usury.
In Sheldon v. Haxtun (91 N. Y., 132), the court say that if the usurious contract be mutually abandoned by the parties, and the securities be cancelled or destroyed, so that they can never be made the foundation of an action, and the borrower subsequently makes a contract to pay the amount-actually received by him, this last contract "will not be tainted by the original usury, and can be enforced, and cites-several cases in support of the principle announced.
Applying these rules to the facts of the case at bar, we find that the original usurious contract was mutually abandoned, but that the other condition stated above, which is-necessary to make legal the new contract, viz: the surrender of the securities received under the old agreement, so that they could never be made the foundation of an action, was not fulfilled.
The parties deliberately attempt to put the $2,500 note one of the securities received under the confessedly usurious agreement in such a position that legal proceedings for the *899 collection of the $2,000 upon it could be maintained. A judgment is confessed upon it, to be used if the amount due upon it was not paid in the stipulated time, and an affidavit that there was $2,000 due upon the note and that there was no defense to it is taken evidently for the purpose of protecting the confession if attacked both of which procedures are utterly irreconcilable with the idea that either party supposed that this note was cancelled or destroyed as an obligation by the new contract. As has been before suggested they evidently supposed the rule to be that if the usurious part of the transaction was eliminated, that the balance would become legal. In this they were mistaken as the law requires the abrogation of each and every part of the old transaction and the giving of new obligations for the real sum which ought to be paid, is no such thing as purging a transaction of usury although that expression is used in the cases cited as examination shows that these cases proceed upon the principle that because there is a moral obligation to pay the sum actually loaned, after the original transaction has been abandoned by the parties and actually ended and destroyed, and all claims under it terminated, such moral obligation will furnish a valid consideration for a promise to pay the money actually loaned.
We think, therefore, that the judgment should be reversed and a new trial ordered with costs to the appellant to abide event.
Bartlett and Macomber, JJ., concur.