## SCOTT v. FABACHER et al.

(Circuit Court of Appeals, Fifth Circuit. February 15, 1910.)

No. 1,796.

1. USURY (§ 2*)—WHAT LAW GOVERNS—PLACE OF CONTRACT—CONTRACT FOR CONTINGENT BENEFIT BEYOND LEGAL RATE OF INTEREST.

Defendant lent complainant $15,000 to be used in the purchase of a tract of land which complainant expected to resell to a corporation at a profit. The transaction took place in Texas, and a note was there given for the money, payable there, and at the same time a contract was entered into signed by both parties and reciting that in consideration of the loan complainant agreed to pay to defendant three-fifths of $10,000 profit realized from the sale of the land, and if such profit was not made to pay 10 per cent. interest on the loan, and also to execute a deed of trust on Texas property to secure performance of the entire contract, which deed was given. Complainant having made the expected profit executed his note to defendant in New Orleans for $6,000. The original note was paid but the second note not having been paid, defendant foreclosed the trust deed and bought in the property, whereupon complainant brought suit to have the foreclosure and sale adjudged void and his title quieted to the property sold. Held, that the giving of the $6,000 note was a part of the original transaction, as recognized by defendant by foreclosing the mortgage for its nonpayment; that it was a Texas contract, and under Rev. St. Tex. 1895, art. 3104 et seq., providing that contracts stipulating for a greater rate of interest than 10 per cent. should be void for the amount of the interest, the note was void and afforded no foundation for the foreclosure proceedings, which were also void.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 2–15; Dec. Dig. § 2.*]

2. USURY (§ 18*)—USURIOUS·CONTRACTS—STIPULATION FOR CONTINGENT BENEFIT BEYOND LEGAL RATE OF INTEREST.

Where a lender has the right to demand the repayment of his loan with legal interest in any event, a stipulation for a contingent benefit beyond the legal rate renders the contract usurious.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 31; Dec. Dig. § 18.*]

Appeal from the Circuit Court of the United States for the Eastern District of Texas.

In Equity. Suit by S. M. Scott against Lawrence Fabacher and others. Decree for defendants, and complainant appeals. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Geo. C. Greer, F. D. Minor, and W. E. Miller, for appellant.

E. E. Townes, L. A. Carlton, and R. E. Milling, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. The appellant, S. M. Scott, in the spring of 1901, was a citizen of the county of Lyons and state of Kansas, but was engaged at Beaumont in the state of Texas in dealing in oil lands and other oil properties, in which there was at that time phenomenal activity in that locality. The appellee, Lawrence Fabacher, was then a citizen of New Orleans and state of Louisiana. He testifies:

"I became acquainted with Mr. Scott in Beaumont, Texas, in the year 1901. I first became acquainted with him before this deal was entered into when I went to Beaumont with a committee to organize the Beaumont Land Company. I met Mr. Scott as stated above in Beaumont, and on that occasion when I was up there with a committee to form a company by the name of the New Orleans & Beaumont Land Company. At that time Mr. Scott stated that he had a deal on hand in which he would need a certain amount of money, and that he would make a large sum thereby. He stated that if he could get $15,000 he would be willing to give me $6,000 profit on the deal that was contemplated. I didn't pay much attention to it, and later on he telegraphed me that the deal was being consummated, and that I should come up there and investigate. I afterwards went up with Judge Skinner, and also one T. P. Thompson, and after investigating the matter and finding that he wanted to give me security for the $15,000 as well as the amount that might be earned from the deal that he was then contemplating, I then entered into a contract in writing with him."

This contract is evidenced by three papers signed and passed at the same instant, and, so far as necessary to recite at this time, are here marked "I," "II," and "III," and given as follows:

"I.

"$15,000.00. May 10, 1901.

"Sixty days after date, I promise to pay to the order of Lawrence Fabacher fifteen thousand dollars at Beaumont Natl. Bank, Beaumont, Texas. Value received. S. M. Scott."

"II.

"Beaumont, Texas, 5/10/1901.

"State of Texas, County of Jefferson.

"This agreement between S. M. Scott, of Beaumont, Texas, and Lawrence Fabacher, of New Orleans, La., witnesseth:

"That, whereas, the said Lawrence Fabacher has loaned to the party of the first part the sum of $15,000.00 for a period of sixty (60) days, now the said Scott does hereby agree to hypothecate unto the said Lawrence Fabacher lots, A, B, C and D of block No. 21; lots A, B, C and D of block No. 27, and lots A and B of block No. 28, as designated in the recorded plat of the Heflebower and Scott subdivision of 2057/10 acres in the south half of the J. W. Bullock league, Jefferson county, state of Texas.

"In consideration of which the said S. M. Scott agrees to pay to the said Lawrence Fabacher the sum of three-fifths (3/5) of $10.000 profit on a sale of 150 acres of land in the J. S. Johnson survey contracted at this time and to be transferred to an oil company which the said S. M. Scott is at this time organizing. The said $10,000 profit is to be divided as stated above with the said Lawrence Fabacher in consideration of his loan of $15,000 to the said S. M. Scott; provided that in any case if the organization of said oil company should for any reason fail to take the land that is now contracted, then, in that case, the said S. M. Scott shall pay at the rate of 10 per cent. interest to the said Lawrence Fabacher on the $15,000 in lieu of the profit and share mentioned

above, and the above and foregoing property to be mortgaged or hypothecated in order to secure the payment of the loan and the fulfillment of this entire agreement by deed of trust of general form of State of Texas. Said $15,000 is evidenced by a promissory note, which is to be paid according to its terms.

"Witnesses:
                                                S. M. Scott,
                                        "Lawrence Fabacher."

Of the third paper it is not necessary to recite here more than the following provision:

### "III.

"And, whereas, it is contemplated that said S. M. Scott may hereafter become indebted unto said party of the third part in further sum or sums, which said indebtedness now accrued, or to accrue in future, it is agreed shall all be payable at Beaumont, Texas, and bear interest at the rate of 10 per cent. per annum from date of accrual until paid, by whatever means the same shall accrue; and this conveyance is made for the security and enforcement of the payment of the said present and future indebtedness."

The $15,000, for which the note was given, was at the same time furnished to S. M. Scott, and the land referred to which he wanted to purchase, was purchased by him and sold to the corporation to which he expected to sell it, and at a profit acknowledged by him to have been of the value of $10,000. On July 2, 1901, the appellee, from New Orleans, wrote the appellant at Beaumont, Texas, as follows:

"Dear Sir: I beg to inform you that I have this day placed with my bank for collection your note for $15,000.00 due July 8th, 1901, also a draft on you for $6,000.00. due July 5th, 1901, said draft is in accordance with our agreement dated May 10th, 1901."

The appellant did not answer this demand by prompt payment. The next communication between the parties shown by the record is a telegram from the appellant dated at Philadelphia, Pa., July 22d, to the appellee at New Orleans, which says:

"Negotiations here practically completed, delayed by hot weather, under circumstances need extension on ten thousand of note thirty days, wire if satisfactory, will send five thousand."

And the next day, July 23d, appellant wired again from Philadelphia:

"Wire us name your New Orleans bank, will have draft sent there direct from Beaumont."

Which appellee answered by wire:

"Must have five thousand before twelve tomorrow."

This $5,000 was sent probably on the 24th of July, being the first payment made on the $15,000 loan.

The appellees, defendants below, in their answer to complainant's bill, averred that after the consummation of the purchase and sale of the land contemplated, the said Scott did, on July 30, 1901, and at other times, confess and agree with the defendant Fabacher, that he (Scott) had bought the land and sold it to the corporation at a profit of $10,000, and thereupon executed to the said Fabacher his certain promissory note to cover said $6,000, same being in the form of a note payable to Scott himself and by him indorsed and delivered to Fabacher, which note is in words and figures as follows:

"$6,000.00.                                      New Orleans, July 30th, 1901.

"Ninety days after date I promise to pay to the order of myself six thousand dollars. Value received.                                      S. M. Scott."

The appellee, in his testimony, says:

"This note was given to me to satisfy me in the payment of six thousand dollars that came out of a transaction of a certain tract of land that was sold by Scott to an oil company. This note was executed in the office of the Jackson Brewing Company in New Orleans on the 30th day of July, 1901. This note was drawn in my presence in the handwriting of Judge Skinner, and was signed by Scott and endorsed by him."

On November 5, 1901, the appellee's agent wrote from New Orleans to the appellant at Beaumont, as follows:

"Mr. Fabacher wishes to notify you that his bank has returned to him your $6,000 (note?) as unpaid, and he also desires to call your attention to the fact that you have not remitted to him the $1,000 balance due on your first note."

To which the appellant replied from Beaumont on the 12th, saying:

"I have just returned. Will remit as soon as draft arrives from home. Perhaps the last of the week."

On the 30th appellee's agent again wrote appellant:

"Mr. Fabacher begs to call your attention to the promise made him in your letter of the 12th inst., wherein you stated that you would probably remit to him in the latter part of that week ending 16th inst. So far you have failed to keep your promise. * * * He asks an early settlement of the amounts due him by you. He expects to hear from you by December 2d; in reference to this settlement."

And appellant answered on December 9, 1901:

"In reply to yours of the 30th ult., I desire to say that I have just received the same upon my return from the north, and desire you to say to Mr. Fabacher that 30 days ago, when I sent you the communication that I did at that time, that the parties who had represented me to have mailed the draft which was to be sent you failed to do so, although their letter to me was positive and I so wrote you. That does not excuse delay in the matter which Mr. Fabacher is interested in. I desire to thank him for his disposition in this matter and will undoubtedly satisfy him in the near future that this delay was not intentional upon my part, and that I will send him a draft in a short time now that I find that he has not received it."

On January 29th, appellant wrote:

"Please find enclosed a draft for $500.00, which you will please apply on the note that is due Mr. Fabacher, which is secured by a trust deed. This is the last payment upon that note. You will please forward to me the note and also the trust deed securing the note. I have this day written to Mr. E. K. Skinner requesting him to see Mr. Fabacher for me."

In the letter to Skinner he said:

"I have no disposition whatever to see Mr. Fabacher get any less than he claims, but as you know I never looked at this matter in the same light that Mr. Fabacher has. I think he is entirely sincere, but I very readily see how he can differ in regard to the real meaning of our contract. This payment that I make to-day fully pays the trust deed, and I am ready to deliver to him an order on Export Oil & Pipe Line Company for his amount of the stock that is due him, and I hope that he can see his way clear to accept it."

On March 28, 1902, appellant wrote from Chicago to the appellee's attorneys:

"I cannot reach New Orleans for a few days, and when I come I expect to be in position to settle with Mr. Fabacher. 1 am very desirous of settling this according to our agreement without any expense of a lawsuit. Of course I hope you can defer any action until I arrive there. I will reach Beaumont about Wednesday of next week, and will reach New Orleans as soon as possible after that."

There is in their correspondence no reference to usury. More correspondence followed, but resulted in no settlement; and on the 12th day of July, 1902, the trustee in the trust deed gave due notice of the sale of the mortgaged premises to take place on the 5th of August, 1902, in front of the courthouse of Jefferson county, Tex., between the hours of 10 o'clock a. m. and 4 o'clock p. m., to the highest bidder for cash; said property to be sold to satisfy said debt ($6,000 note), and the cost of sale as provided in said instrument. On that day (5th of August) and before the hour of sale, appellant brought suit in the proper state court, attacking the claimed debt and deed of trust for usury, seeking to have the same canceled, and to remove the cloud from his property therein described because of said deed of trust; of which due and timely notice was given before and at the sale. The sale proceeded and the property described in the deed of trust was adjudicated to Fabacher as the purchaser, and a formal conveyance was made to him by the trustee. The suit, which was begun in the state court, was duly removed to the Circuit Court of the United States for the Eastern District of Texas. The plaintiff amended his pleadings, the defendants answered, and the defendant Fabacher (appellee) filed a cross-bill, stating at large his case on the $6,000 note, and praying that upon a hearing he have judgment against the plaintiff fixing and establishing his title in and to the land so purchased by him under the deed of trust as described in plaintiff's bill as well as in the cross-bill; that he have a writ of possession for the land; that he be given judgment for the balance due him, principal and interest, on the $6,-000 note hereinbefore described, etc. And such proceedings were thereafter had that on the 17th day of December, 1907, that court rendered judgment denying to the plaintiff any part of the relief prayed for by him, and rendered judgment in favor of the defendant Fabacher on his cross-bill for the amount of his debt, interest, and cost, and quieting his title to the land sold under the deed of trust as described in the amended bill. From that judgment this appeal is taken.

The assignment of errors is substantially that the contract was usurious; that the principal of the debt was fully paid before the appellee undertook to foreclose the deed of trust; that the court erred, therefore, in denying to plaintiff the cancellation of the trustee's deed, and in refusing to remove the cloud thereby cast on the appellant's title to the land mortgaged, and in rendering judgment against plaintiff in favor of Fabacher for usurious interest on the sum loaned, and in not decreeing that the $6,000 note, which was wholly for usurious interest, be delivered up and canceled. The state of Texas, by an amendment to her Constitution adopted September 22, 1891 (Const. art. 16, § 11), which is still in force, provided that a rate of interest greater than 10 per cent. per annum shall be deemed usurious, and required the Legislature to provide appropriate pains and penalties to prevent the offense

of usury; and the Legislature did promptly provide that all written contracts stipulating for a greater rate of interest than 10 per cent. per annum shall be void and of no effect for the amount or value of the interest only; that the principal sum of the contract may be received and recovered; and that where usurious interest is received or collected, the person paying the same may, by action of debt within two years after such payment, recover from the receiver double the amount of interest so received and collected. As a defense, usury must be set up by a verified plea. Articles 3104, 3106, 3107, Rev. St. Tex. 1895. The courts of Texas have exercised jealous vigilance in discovering and rebuking usury whenever and in whatever disguise it may have been shown to exist. The learned counselor for the appellee in this case contends that the real issue is not whether the contract made on the 10th day of May, 1901, was usurious, but whether or not the $6,-000 note made and delivered in New Orleans on the 30th day of July, 1901, is valid as against a plea of usury. This suggestion treats the $6,000 note as a new and separate transaction made at a different time and in a different state where the Texas law of usury has not force. But is it a different transaction? We have attempted to recite fully the dealings of these parties with one another as represented by the writings that passed between them not only on May 10, 1901, but all along the track of their dealings up to the attempt to execute the deed of trust. From this recital of the evidence it seems clear to us that the $6,000 note does expressly relate to the provision of the deed of trust which we have recited. In addition to the language of the writing signed by both the parties on May 10, 1901, which we have copied in full and designated as "Part II" of the contract, the action of the appellees in their attempt to execute the deed of trust to enforce payment of this note seems to unite these two papers so vitally that as to this litigation they can only stand or fall together. That paper, signed by both parties, to which we have just referred, shows that Fabacher has loaned Scott the sum of $15,000 for a period of 60 days; that Scott agrees to secure the same by deed of trust on the property therein described, and agrees to pay to Fabacher the sum of three-fifths of $10,000 profit on the sale of 150 acres of land therein mentioned; and provides that in any case, if he fails to make the profit which he expects, Scott shall pay, at the rate of 10 per cent. per annum, interest to Fabacher on the $15,000 in lieu of the profit; and that the property to be hypothecated in order to secure the fulfillment of the loan is mortgaged to secure the fulfillment of the entire agreement; and the deed of trust shows that the parties contracted that the indebedness accruing on the 10th day of May, 1901, by the loan of the $15,000 and described as now accrued, and the indebtedness to accrue in the future under the contract between the parties, shall all be payable at Beaumont, Tex., and bear interest at the rate of 10 per cent. per annum from date of accrual until paid, by whatever means the same shall accrue. It would be difficult to show more plainly than these provisions do that the parties were contracting with regard to the laws of the state of Texas because the conventional rate of interest in Texas is a rate not to exceed 10 per cent., both parties were in that state when the contract was made, and contracted that it should be performed at Beau-

mont, Tex. It is said in Browne v. Vredenburgh, 4 Hand (N. Y.) 197, that when a lender stipulates for a contingent benefit beyond the legal rate of interest, and has the right to demand the repayment of the principal sum with the legal interest thereon, in any event the contract is in violation of the statute prohibiting usury, and void.

We are referred to Scudder v. National Bank, 91 U. S. 406, 23 L. Ed. 245, and to De Wolf v. Johnson, 10 Wheat. 367, 6 L. Ed. 343. The first of these cases is so different from the one we are considering that the language of the opinion touching on matters bearing on the execution, interpretation, and validity of a contract, which is relied on, can have no application here. In the other case we find this language:

"The contract of 1817, in which this mortgage originated, was executed in Kentucky, and had its inception in an intimation from Prentiss of a design to avail himself of the plea of usury. Upon this, De Wolf repaired to Kentucky, and there instituted a new negotiation with Prentiss personally, having for its object to clear the contract from all usurious incidents, and to take security for the sum loaned, at the legal rate of interest of Kentucky, which, as well as that of Rhode Island, is six per cent. Accordingly, all the instruments of writing which appertained to the old contract were surrendered mutually, and a new mortgage given to secure the balance now sued for, the original sum having been reduced, by large actual payments, to the sum for which this mortgage was given, and which includes the same premises conveyed under the prior contract."

From this language of the opinion it appears clear to us that the language quoted by counsel, viz., "It is not very easy to discover how the taint of Rhode Island usury can infuse itself into the veins of a Kentucky contract," does not reach the contract we are considering.

We are also referred to Sheldon v. Haxtun, 91 N. Y. 124. In the controlling opinion in that case we find this paragraph:

"If this note for $1,000 had been given in this state (New York), even with the lawful rate of interest mentioned therein, in renewal of or in substitution for the prior usurious note, it would also have been tainted with usury and void. A substituted or renewal note thus given is held void for one or both of these reasons: The new note in such a case is given in renewal or continuance of the usurious contract, and is therefore void for the same reason that condemns that contract; or it is a new security for a usurious debt or contract and void on that account. But a usurious contract can be purged of the taint of usury and money loaned upon a usurious contract can furnish a valid consideration for a promise to pay the money actually loaned. If the usurious contract be mutually abandoned by the parties, and the securities be canceled or destroyed so that they can never be made the foundation of an action, and the borrower subsequently makes a contract to pay the amount actually received by him, this last contract will not be tainted by the original usury and can be enforced."

Counsel, towards the close of his printed brief, asks this question: "Now would this contract be usurious under the laws of the state of Texas?" and refers to the case of Huddleston v. Kempner, 1 Tex. Civ. App. 211, 21 S. W. 946. In this case it was shown by the evidence that plaintiff used his capital in connection with his business in making advancements to cotton shippers, and to pay drafts drawn on cotton, in order to induce shipments of cotton, and not as a money lender; that he gave his personal attention to his business as a cotton factor, and had an office, sample room, several clerks, and had provided every

facility for carrying on his business. The evidence showed conclusively that the advancement was made in connection with Kempner's business for the purpose of promoting the consignments of cotton to him as a cotton factor and commission merchant, and Kempner was allowed to recover on the authority of Mills v. Johnston, 23 Tex. 309–324.

In Mills v. Johnston, we find the opinion opens with this paragraph:

"The commission business is the creature of agriculture and commerce, and has grown up in all the great centers of trade throughout the United States. The commission merchant finds his proper and necessary place between the farmer or planter, who tills the soil and produces crops, and those by whom the productions of the earth are manufactured or consumed. To state that this kind of business is necessary to agriculture and commerce, is at the same time to state that the laws of the country extend their protection to it. The most enlightened courts of the Union have adjudged that the commission business is a lawful business, and that the commission merchant is as much entitled to a reasonable compensation for services that he may render to those with whom he transacts business, as any other person is entitled to be paid for any other service. Embarrassing questions, growing out of the local usages of commission merchants, have sometimes been presented to the courts. But these questions are all solved by the application of a few plain and intelligible principles. The question whether or not a commission merchant is entitled to charge a certain commission in a given case, is answered by ascertaining whether or not the commission charged is a fair and reasonable compensation for a service rendered. If it be fair and reasonable, then it may be charged and recovered by law. If it be unreasonable or exorbitant, then, in the absence of such a special contract as would preclude inquiry into its fairness and reasonableness, it cannot be recovered by law. Again, if the name of commission be used as a disguise for some other thing, which the law does not permit, the courts will have no regard for the mere name, but will strip the unlawful thing of its borrowed name, and condemn it by its true name."

It seems clear to us that Fabacher can get no help from either of these cases.

We have examined to some extent all of the cases cited in the very able brief of counsel, but decline to review them further, because, in the view we have taken of the facts of the case we are passing on, they do not apply.

We conclude that the original sum loaned having been paid before any action was taken under the deed of trust, and the other indebtedness claimed by the appellee being wholly for usurious interest, the deed of trust was satisfied, and the sale made by the trustee on the 5th of August, 1902, was void, and the deed executed by him to the purchaser was void, and the $6,000 note was void, and the Circuit Court erred in not so finding and decreeing. Therefore the decree of that court is hereby reversed in all respects, and a proper decree will be here and now rendered canceling the deed executed by Skinner, trustee, to Fabacher, and removing the cloud thereby cast on appellant's title to the land mortgaged, and canceling and declaring null and void the $6,000 note.

And it is so ordered.